[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS ON GROUNDS FORFORUM NON CONVENIENS
The defendant has filed a motion to dismiss on the basis of the doctrine of forum non conveniens. On April 14, 1993 the plaintiff was driving a truck in Rhode Island and stopped at the defendant dealership to have the windshield replaced. The defendant does not install windshields and it retained Auto Glass Works, also a Rhode Island business, to do the work. Apparently Auto Glass acts as an independent contractor to do these jobs for the defendant. On August 17, 1993 the plaintiff while operating CT Page 5284-OOOOOO the truck in Wallingford, Connecticut activated the defroster. The plaintiff alleges that windshield glass fragments were then propelled into the plaintiff's right eye. The plaintiff brought suit against the defendant claiming the defendant or its employees caused the plaintiff's injuries in that the defendant failed to inspect the truck after the windshield was replaced, failed to vacuum the truck after installing the windshield or warn operators including the defendant of the dangers of glass fragments in the defroster system, and that in fact it allowed such fragments to remain in the defroster vent and had failed to implement an adequate inspection system to prevent glass fragments from remaining in the defroster vents.
The defendant Colony Ford maintains it did not perform the work about which the plaintiff complains. Auto Glass did the work and therefore pursuant to § 117 of the Practice Book the defendant would have the right to implead Auto Glass into this case. However, the defendant maintains that Auto Glass does not have sufficient minimum contacts with Connecticut to allow it to be impleaded under § 33-411(c) of the General Statutes. The defendant in fact has not attempt to implead Auto Glass.
As a result of all this the defendant has filed a motion to dismiss based on the doctrine of forum non conveniens. If the court were to grant this motion the plaintiff would have until August 17, 1996 to file suit against the defendant in Rhode Island. The defendant is also willing to waive any rights it might have under the statute of limitations so that the plaintiff could effectuate his suit.
The case of Union Carbide Corp. v. Aetna Casualty SuretyCo., 212 Conn. 311 (1989) vests broad discretion in trial courts to decide where the trial "will best serve the convenience of the parties and the ends of justice", Id. p. 319. That court noted that the guidelines set forth in Gulf Oil Corp. v. Gilbert,330 U.S. 501, 507 (1947) and restated in Piper Aircraft Co. v. Reyno,454 U.S. 235, 257 (1981) "provide a useful frame of reference" but "federally crafted guidelines do not impose binding directives upon our Connecticut common law, but rather should be viewed as a illuminating the variety of competing private and public considerations that a trial court must weigh in the balance as it determines whether dismissal for forum non conveniens is warranted," Id. page 319. That is the spirit in which the defendant presented numerous federal cases to the court and it was perfectly appropriate for counsel to do so. CT Page 5284-PPPPPP
Preliminarily let it be said that in deciding this motion the court does not in any way adopt the proposition advanced by the plaintiff that dismissal would violate Article 1, Section 10 of our state constitution which gives litigants access to our courts. If the plaintiff's argument were to be accepted a motion such as this could never be made and certainly our cases recognize the viability of a motion to dismiss on forum non conveniens grounds even if they take the view that it should rarely be granted, Picketts v.International Playtex, Inc., 215 Conn. 490 (1990). In fact the plaintiff does have access to the courts of our state, he brought his suit here and now the court has to decide if the matter should be dismissed under this doctrine. If the plaintiff's position were to be accepted and such motions could not be filed in our state, what would be the plight of Connecticut residents sued in other states who wish to have a matter dismissed there so that they could defend in our state? Would other states pass laws or constitutional provisions similar to our Article 1, Section 10 even if no such provisions are presently operative in their states. Article 1, Section 10 should be interpreted with these considerations in mind. The doctrine of forum non conveniens is a long standing common law doctrine and even constitutional provisions must be interpreted within the common law matrix which surrounds them.
(1)
Our Appellate Courts in recent years have made it clear that trial courts should dismiss cases brought in our courts on the basis of the doctrine of forum non conveniens only in "exceptional circumstances", Sabino v. Ruffolo, 19 Conn. App. 402, 406 (1989). The doctrine has been described as a "drastic remedy" and language in other cases that "the plaintiff's choice of forum should be rarely disturbed" has been referred to with favor Picketts v.International Playtex, Inc., 215 Conn. 490, 500-501 (1990). Also the defendant bears the burden of persuasion that the chosen forum is so inconvenient as to warrant dismissal, Id. page 509. TheSabino court gives an important analysis as to how state courts should address this type of motion suggesting Connecticut courts should be more reluctant to grant such motions than Federal Courts. When a Federal Court decides not to hear a case because it concludes another forum is more appropriate it can dismiss the case on the basis of forum non conveniens "in which case the suit can be reinstituted under identical procedures, embodied in the Federal rules of civil procedure in another federal district court . . . or CT Page 5284-QQQQQQ the original court can transfer the case under 28 U.S.C. § 1404(a). In the former case, the plaintiff is assured of another procedurally identical forum within the federal system. . . . In the latter case, not only does the federal system assure the plaintiff another forum with the same procedural law as the original court would have provided, but the court to which the case is transferred will apply the same substantive law as the original court would have used. . . ." 19 Conn. App. at page 409.
There are many traditionally accepted and strong reasons to keep this case for trial in Connecticut. The plaintiff is a resident of this state and the actual injury occurred to him in this state. It is quite true as the defendant points out that the alleged acts of negligence which later caused the injury occurred in Rhode Island. But counsel for the plaintiff notes that Connecticut is the location of the truck involved in the alleged injury as well as important witnesses such as the plaintiff's employer, treating physicians and witnesses who will testify as to the effect of the injury on his life. If the defendant were to be successful on this motion, the plaintiff would have to go through the inconvenience and expense of filing suit anew in a Rhode Island court. In that court he would or at least might have to retain local counsel familiar with Rhode Island procedural law concerning motion, discovery and trial practice. This court cannot give a qualified motion to dismiss or control the actions of the Rhode Island courts so it cannot guarantee the scope of discovery in Rhode Island as compared to what is available here and cannot even predict where any depositions even of the plaintiff's witnesses will take place, cf our Practice Book Rule § 246(b). For trial purposes the defendant, his counsel, and his witnesses, expert and lay, will have to travel two to three hours each court day to and from a Rhode Island court and perhaps some of them will opt to undergo the expense of remaining in Rhode Island while the trial or portions of it are going on. True, Rhode Island is an adjacent state and the distances are not enormous but these matters cannot be ignored in light of the fact that the plaintiff would otherwise be entitled to the convenience, as a New Haven resident, of bringing suit in a Connecticut court located in New Haven.
Concerning the litigation between the plaintiff and the defendant there is no reason why the court should grant this motion. True the defendant is an out of state resident but given the location of witnesses and evidence it would be more practical to try the case in our state. As noted huge distances are not involved so that the defendant's agents and employees travel the 50 CT Page 5284-RRRRRR or 60 miles from their place of business to court in New Haven. The defense firm is located in Providence some 100 miles away but counsel for that firm litigating the matter now before the court is herself a Connecticut resident. These observations don't even take into account the heavy weight that must be given to this Connecticut plaintiff's choice of a home forum to pursue his litigation in the very state where his injury allegedly occurred.
What makes this case more difficult is the fact that the defendant here argues that it has good reason to implead Auto Glass Works into this case on an indemnification theory. This is certainly a good faith claim; Auto Glass did the actual work of replacing the windshield and very well might have caused the condition that later lead to the plaintiff's injuries. If for the moment we presume the defendant could not bring Auto Glass into this litigation under Practice Book § 117 because the latter company does not have sufficient contacts with Connecticut to assert personal jurisdiction over Auto Glass, there are several reasons that could be advanced to support the granting of this motion.
True it would be inconvenient for plaintiff and his counsel to litigate the matter in Rhode Island but again the distances are not enormous. This might be easier for the court to say than the plaintiff to accept, however, since Providence is 100 miles from New Haven where the plaintiff resides and 140 miles from where his lawyer is located in Stamford. In any event if a trial were held in Rhode Island, Auto Glass could be impleaded and all the legal consequences of this accident disposed of in one litigation process. If the defendant's motion is denied, it would have to bring a separate suit in Rhode Island after the litigation in Connecticut is concluded. This would result in a waste of judicial resources because of the obvious duplication of effort. Also the defendant argues its position might be irretrievably harmed since the Connecticut litigation might take several years to conclude and when the defendant then brings an indemnification action in Rhode Island witnesses necessary to prosecute that action may no longer be available; Auto Glass might be out of existence. Sabino andPicketts did not deal with inability of a defendant to implead a responsible party in the Connecticut litigation as a factor to be considered in the equation that must be weighed by a trial court in considering a motion to dismiss for forum non conveniens.
Federal courts have considered the defendant's inability to implead potential third party defendants as one factor favoring the granting such a motion and in effect requiring the trial to proceed CT Page 5284-SSSSSS in a forum where such potential third party defendants could be impleaded; Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257-259
(1981), Lacey v. Cessna Aircraft Co., 736 F. Sup. 662, 667 (W.D. Pa, 1990) (rev'd 932 F.2d 170 (1991)) but not on basis of fact that district court considered impleader factor), Brown v. BlidbergRothchild Co., 222 F. Sup. 18, 19 (D.Del., 1963) (motion to transfer between district courts), similarly Waxman v. WestonHotels Resorts, (1995 W.L. 242055-SDNY), also see Fitzgerald v.Texaco, Inc., 521 F.2d 448, 453 (CA 2, 1975), Weinke, et al v.Weinke, 467 N.Y.S.2d 449 (1983), Fletcher v. Exxon Shipping Co.,727 F. Sup. 1086 (CD Tex, 1989) (transfer case).
Several of these cases, however, contain factors not present in the case before the court. In Piper Aircraft the plaintiffs were Scottish nationals acting as representatives of the estates of several Scottish citizens killed in an air crash. They brought suit in a federal district court in Pennsylvania where Piper Aircraft, the plane manufacturer, was located.
The court noted that "a large proportion of the relevant evidence is located in Great Britain", 454 U.S. at page 258 where in fact the parties whom the defendant wanted to implead were also located. In Lacey the plaintiff opposing the motion was an Australian citizen who also brought suit in a federal district court in Pennsylvania; only one of the three corporate defendants sued were even located in Pennsylvania. In reversing the district court's granting of the motion, the Court of Appeals was concerned whether the plaintiff would have appropriate access to evidence necessary to prosecute his action in a British Columbia court where he would have to reinstitute suit if the motion were to be granted, 932 F.2d at pages 183-187. The plane crash leading to the suit occurred in British Columbia. In Brown v. Blidberg Rothchild, Co.,
supra a motion to transfer was granted where the plaintiff brought suit in a Delaware federal district court for an accident that occurred in Mobile, Alabama. The defendant's motion to transfer was granted because the defendant claimed it wanted to implead the plaintiff's employer on an indemnity claim — the employer was apparently amenable to service in Alabama. In Waxman v. WestonHotels Resorts, Inc., supra a New Jersey plaintiff brought suit against the defendant which had a sales office in New York in the Southern District of New York. Corporate headquarters were located in Delaware and the injury to the plaintiff occurred in a Weston hotel at O'Hare airport in Chicago. Not only was the plaintiff not a resident of the Southern District, many of the facts necessary to resolve the matter occurred in Illinois. Under these circumstances CT Page 5284-TTTTTT the court in granting the motion to transfer gave weight to the fact that the defendant wanted to implead Chicago Automatic Door Inc. which had installed, serviced, and maintained the sliding door which the plaintiff claimed caused her injury. In Fitzgerald v.Texaco, Inc. supra the administrator of the estates of twelve German seamen brought an action in the federal court in the Southern District of New York as a result of a collision of their ship with a submerged vessel owned by Texaco. The collision occurred in the Dover Straits twelve miles from the coast of England. The court did consider the interest of the defendant in and its right to implead parties not subject to suit in the Southern District but also noted suits were already pending in England and much of the evidence to resolve the matter depended on foreign witnesses.
It is true that in Weinke, et al. v. Weinke, supra the court granted the motion to dismiss on the ground of forum non conveniens where the plaintiff was a New York resident and the suit was brought in New York. The court noted that the defendant had an apportionment claim which could not be advanced in the New York courts but only could be resolved in Massachusetts. But the court also noted that the two car accident happened in Massachusetts, both cars were registered and operated there by Massachusetts residents. In Fletcher v. Exxon Shipping, Co., supra the court ordered the plaintiff's case to be transferred from a district court in Texas to one in Oregon. It noted the defendant had a possible indemnity claim against an Oregon shipping yard but also noted the accident occurred in Oregon, numerous witnesses were in Oregon and the plaintiff employee did not even live in the Eastern District of Texas.
In this case the plaintiff is a Connecticut resident bringing his suit in a Connecticut Court as a result of injuries he suffered in Connecticut. The truck in which he was injured is located here as well as his lay witnesses and treating physicians. His lawyers live at the western end of our state. If forced to litigate this matter in Rhode Island they will not be able to rely on the uniform rules of practice and procedure and evidence operative in the Federal Courts. They will be enmeshed in the procedure of a foreign jurisdiction and plaintiff may very well have to hire local counsel in that jurisdiction.
The fact that any indemnification action by the defendant may be postponed for several years is unfortunate but it is only speculation that has been presented to the court to indicate CT Page 5284-UUUUUU witnesses may disappear or Auto Glass may go out of business if this motion is not granted. I cannot even say that at least some testimony of Auto Glass employees or officers will not be presented and at least memorialized in this litigation. There will be a duplication of judicial effort if the motion here is not granted. But neither this trial or the indemnification action appear to be complicated and lengthy matters that will consume enormous resources. This does not appear to have been true at least in some of the cases previously discussed, cf Piper Aircraft Co. v. Reyno,
supra, Lacey v. Cessna Aircraft Co., supra, Fitzgerald v. Texaco,Inc., supra. In any event when weighed against the plaintiff's residence, and the strong factual nexus of this case to our jurisdiction and also taking into account, but to a lesser extent, the practical problems that would present themselves to plaintiff's counsel if they had to litigate this matter is Rhode Island, I cannot say the impleader consideration warrants the "drastic remedy" of dismissing this plaintiff's action. I would deny the motion to dismiss then even on the assumption that the defendant could not implead Auto Glass into this action.
(2)
The foregoing discussion assumes that the defendant could not now or within a reasonable time after suit have impleaded Auto Glass into this action. As the defendant argues this requires a two step analysis. First the court must ascertain if under the state long arm statute jurisdiction could be asserted over Auto Glass, second the court must determine whether exercise of that jurisdiction satisfies Federal due process requirements.
Our long arm statute is § 33-411 of the General Statutes and the relevant section is section (c). It is evident that under our statute jurisdiction over Auto Glass could not be asserted under subsections (1) or (2). Auto Glass' work on the truck did not arise out of any contract made or to be performed in Connecticut. Nor can it be said that pursuant to subsection (2) any cause of action in this case could be said to have arisen out of any business solicited by Auto Glass in Connecticut. Auto Glass is a Rhode Island business with no asserted contractural connections to any Connecticut entity or no claimed pattern of solicitation of business in Connecticut. It replaced a window of a truck that was owned by a Connecticut business and registered in Connecticut and did the work at the request of another Rhode Island business. No lengthy reference to cases is necessary to establish that the plain language of subsections (1) and (2) of section (c) of § 33-411 make CT Page 5284-VVVVVV clear that jurisdiction cannot be acquired over Auto Glass under these subsections. Also it is clear that subsection (4) does not apply since no tortious conduct is alleged to have occurred in this state. Any negligence occurred in Rhode Island if it occurred anywhere.
Subsection (3) does raise interesting considerations. That subsection allows jurisdiction to be asserted in any cause of action arising "(3) out of the production manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used and consumed. . . ."
Auto Glass replaced the whole front windshield of this truck; this article can certainly be described as a "good". The question is if the windshield was otherwise non-defective can a cause of action be said to arise out of the "distribution of goods" where the harm allegedly resulted from the negligent installation of the otherwise non-defective windshield. How are windshields for trucks distributed? I do not believe they are put in shopping bags to be carried off by the happy purchaser. In many cases distribution of such a product would necessarily require or contemplate installation to replace broken or shattered windshields. So query whether negligent installation of a product could be considered part of the distribution of the product — I could find no Connecticut cases on this question. But I see no reason why our statute should not be liberally read within appropriate due process constitutional boundaries. Subsection (c) of the statute also requires that a foreign corporation in the position of Auto Glass have a "reasonable expectation" that the product (windshield) would be "used" in Connecticut. The defendant points out that nothing in the work papers submitted to Auto Glass would indicate the truck was owned by a Connecticut corporation or was registered in Connecticut. But apparently the truck had Connecticut license plates on it. Rhode Island is a small state adjacent to our state. The truck was a tractor truck, the defendant truck center is located in Warwick, Auto Glass is located in Warwick and that town is only 35 to 40 miles from the Connecticut border. It is not fanciful to determine that there are grounds for concluding that Auto Glass would have a "reasonable expectation" that the product it installed would be "used" in Connecticut. It does not appear to require much more than common sense probabilities to establish the "reasonable expectation" requirement of subsection (c), cfEnsign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Sup. 1018,1026 (D. Conn. 1993). CT Page 5284-WWWWWW
Apart from what Connecticut's long arm statute might provide would assertion of jurisdiction over Auto Glass comport with federal due process? International Shoe Co. v. State ofWashington, 326 U.S. 310, 316 (1945) of course indicates that our statute must meet due process requirements. There must be sufficient minimum contacts to permit the assertion of personal jurisdiction over a foreign corporation and "in judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation', Shaffer v. Heitner,433 U.S. 186, 204 (1977)", Keeton v. Hustler Magazine, 465 U.S. 770,775 (1983). The activity involved must not be "random, isolated, or fortuitous, Id. at page 774. The defendant operates a truck center, it contracts out some of its work to Auto Glass. The truck involved had Connecticut plates and was of a type used in interstate commerce. It would be interesting to know — but this could be only developed after a hearing necessitated by a motion to dismiss filed by the foreign corporation brought into our state under § 33-411 — whether the defendant and Auto Glass are located next to an interstate, how much of the defendant's business involves servicing trucks travelling on the interstate, how much of the business it contracts out to Auto Glass involves interstate customers who given the traffic on the interstate would in all likelihood travel to Connecticut or have businesses located in Connecticut? All of this raises interesting questions which I am not prepared to resolve against the right of the defendant to implead Auto Glass. There may be a problem at this late date to implead Auto Glass under the apportionment statute but I do not know whether the defendant can implead Auto Glass under a contractural or common law theory of indemnification. It would have been useful to have had these matters litigated. In any event even if the foregoing discussion does not warrant a conclusion that impleader was a viable course of action for the reasons previously mentioned, I will deny the motion to dismiss.
Thomas Corradino, Judge