ROBERT E. BARDE *v.* BOARD OF TRUSTEES OF REGIONAL COMMUNITY COLLEGES
(13180)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued January 12—decision released April 12, 1988

*Robert L. Hirtle, Jr.,* with whom was *Mark A. Rosenblum,* for the appellant (plaintiff).

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,*

attorney general, and *Robert W. Garvey,* assistant attorney general, for the appellee (defendant).

COVELLO, J. This is an appeal from the dismissal of the plaintiff's declaratory judgment action for lack of jurisdiction. The plaintiff, Robert E. Barde, sought by way of declaratory relief from the defendant, board of trustees of regional community colleges, tenured status as an accounting professor and an increase in his salary.

The defendant moved to dismiss the action claiming that the doctrine of sovereign immunity deprived the court of subject matter jurisdiction. The court concluded that: (1) the real party in interest was the state; (2) there had been no permission granted to bring this action; (3) allegations of constitutional violations advanced by the plaintiff were insufficient; and (4) the court lacked subject matter jurisdiction by reason of the doctrine of sovereign immunity. The court therefore granted the motion to dismiss and the plaintiff appealed. Since there were two separate prayers for relief, i.e., (1) tenured status as an acting professor, and (2) an increase in salary, a separate analysis with respect to each claim is required. See *Doe* v. *Heintz,* 204 Conn. 17, 526 A.2d 1318 (1987).

The dispositive issue on appeal with respect to the plaintiff's tenure claim is whether his claims of the denial of federal and state constitutional guarantees of due process and equal protection of the laws were sufficiently established so as to preclude the operation of the doctrine of sovereign immunity. We conclude that this was not the case and that the trial court correctly held that there was no subject matter jurisdiction. We therefore find no error on that claim. With respect to the plaintiff's claims for an increased salary, and for benefits because of an alleged estoppel, the plaintiff's claims were correctly dismissed because

of his failure to exhaust administrative remedies whose availability has not been contested.

Examination of the record discloses that the plaintiff was the dean of academic affairs at Manchester Community College from 1980 through 1986. On July 15, 1985, the plaintiff sought a transfer to faculty status. He thereafter resigned his $50,321 per year job as dean and accepted a ten month position as a nontenured, full professor at a salary of $39,585.

The complaint alleged that on two prior occasions, college deans had been appointed to full, tenured professorships at "83.33% of their previous year's salary, plus any wage-reopener under the applicable collective bargaining agreement." In the plaintiff's case, such an arrangement would have produced a salary of $45,304. The complaint further alleged that the plaintiff's resignation as dean had been based upon an expectation of similar salary and tenure treatment, that the defendant knew this and yet failed to treat his transfer in the same fashion as others similarly situated. The plaintiff claimed that the defendant "denied [him] his constitutionally guaranteed rights to due process and equal protection of the law as provided by the Constitution[s] of the United States of America and the State of Connecticut."

In a second count incorporating the earlier allegations, the plaintiff further claimed that having "reasonably relied to his detriment . . . the Board is now estopped to deny to [him] the benefits it has conferred on similarly-situated individuals in the past . . . ."

In reviewing the validity of constitutional claims in the context of a jurisdictional dispute, we note that "[a] motion to dismiss pursuant to Practice Book § 142 may perform the role of either a motion to erase or a plea in abatement under our former practice." *Pellegrino* v. *O'Neill,* 193 Conn. 670, 672 n.4, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176

(1984). The motion to dismiss like a "motion to erase admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." *Perrys, Inc.* v. *Waterbury Redevelopment Agency,* 157 Conn. 122, 124, 249 A.2d 256 (1968). Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts,[1] the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint. *Garden Mutual Benefit Assn.* v. *Levy,* 37 Conn. Sup. 790, 791, 437 A.2d 141 (1981).

The supporting affidavits filed by the defendant disclosed the following additional undisputed facts. On July 15, 1985, the plaintiff, then dean of academic affairs, wrote William E. Vincent, the president of Manchester Community College, advising him that he was amenable "to a change to faculty status." On July 24, 1985, Vincent responded to the plaintiff's letter, agreeing to support his "reassignment to full-time teaching" with the understanding, however, that "the terms and conditions of your appointment to the faculty will have to be worked out with Mr. McKirdy [the Executive Director] and gain subsequent Board approval." On January 15, 1986, the plaintiff again wrote Vincent stating that his desires were "(1) Academic Rank of Professor; (2) A salary conversion to 10/12; (3) Tenure." On January 22, 1986, Vincent responded by memo that included the statement "I informed you orally that your appointment recommendation would contain the following essential elements. (1) Rank of full Professor; (2) A salary set at the seven-year target salary standard in effect as of July 1, 1986 for professors;[2] [and]

[1] Practice Book § 143 provides in relevant part that "[the] motion [to dismiss] shall always be filed with a supporting memorandum of law, and where appropriate, *with supporting affidavits as to facts not apparent on the record.*" (Emphasis added.)

[2] This was the procedure used to arrive at the $39,585 salary paid to the plaintiff.

(3) *appointment without tenure* in the new job function." (Emphasis added.) There is nothing in the record to indicate that the plaintiff ever challenged this proposal by way of a reply.

On May 8, 1986, Vincent again wrote the plaintiff setting forth his recommendations to the defendant concerning the plaintiff's reassignment to a faculty position. The letter's essential terms were identical to those conveyed to the plaintiff in the memo of January 22, 1986.

On May 12, 1986, the plaintiff wrote Vincent stating for the first time that "[t]here are two areas which I do not find satisfactory; namely, the matters of tenure and compensation." The letter concluded, "I am hopeful that these two matters can be resolved to my satisfaction prior to presentation to the Board . . . ."

On May 15, 1986, executive director Andrew C. McKirdy wrote to the plaintiff acknowledging receipt of the May 12 letter in the president's absence. He confirmed that his (McKirdy's) recommendation to the defendant would be identical to that recommended by Vincent. The letter further stated, "I understand that you are aware of other managers who have been appointed to the faculty with tenure. In these circumstances, the Board simply recognized the fact that the individuals had *achieved tenure previously* under the preexisting Board policies. *Your case, of course, differs.*" (Emphasis added.) The plaintiff has not challenged by counteraffidavit, brief or argument the accuracy of this statement.

On June 16, 1986, the defendant approved the reclassification of the plaintiff's position from that of dean of academic affairs to that of professor of accounting. The specific terms of the reclassification were in accordance with Vincent's earlier recommendation.

Although the named defendant here is the board of trustees of regional community colleges, these colleges are state public institutions and the real party in interest is the state. "[S]ince the state can act only through its officers and agents a suit against a state officer [or board] is in effect one against the sovereign state." *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977).

"[W]e have long recognized the . . . common-law principle [the doctrine of sovereign immunity] that the state cannot be sued without its consent . . . ." Id. The state did not consent to the institution of this action. However, "[i]n a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." *Sentner* v. *Board of Trustees,* 184 Conn. 339, 343, 439 A.2d 1033 (1981). The allegations of such a complaint and the factual underpinnings if placed in issue, must clearly demonstrate an incursion upon constitutionally protected interests. See, e.g., *Upson* v. *State,* 190 Conn. 622, 625, 461 A.2d 991 (1983); *Horak* v. *State,* 171 Conn. 257, 261, 368 A.2d 155 (1976).

The plaintiff first claims that his due process rights have been compromised. "The fourteenth amendment to the United States constitution prohibits any state from depriving any person of 'life, liberty, or property, without due process of law.' Article one, section eight of our state constitution contains the same prohibition and is given the same effect as the fourteenth amendment to the federal constitution." *Lee* v. *Board of Education,* 181 Conn. 69, 71–72, 434 A.2d 333 (1980).

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already* acquired in specific benefits. These interests—property interests—may take many forms." (Emphasis added.) *Board of Regents* v. *Roth,* 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The plaintiff does not challenge the man-

ner in which his job as dean terminated. The essence of his argument is that he expected the tenure and salary status of his future employment contract as a faculty member to be the same as those furnished to others in similar circumstances. This unilateral expectation of benefits is simply not enough to create a constitutionally protected property interest within the meaning of the fourteenth amendment. Id., 577. The claim of a due process violation is therefore simply inappropriate.

The plaintiff further claims that he has been denied the equal protection of the law. The fourteenth amendment to the United States constitution provides that "[n]o state shall . . . deny any person within its jurisdiction the equal protection of the law." Article first, § 20, of the Connecticut constitution contains similar language. "This court has many times noted that equal protection clauses of the state and federal constitutions have a like meaning and impose similar constitutional limitations." *Horton* v. *Meskill,* supra, 639.

" 'The Equal Protection Clause is not addressed to the minimal sufficiency but rather to the unjustifiable inequalities of state action. It mandates nothing less than that "all persons similarly circumstanced shall be treated alike." *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 [40 S. Ct. 560, 64 L. Ed. 989 (1920)].' " *Horton* v. *Meskill,* supra, 645–46.

The linchpin of the plaintiff's equal protection argument lies in his contention that other administrators moved to the faculty in a tenured status and that although similarly situated, he was not similarly treated. The May 15, 1986 letter from McKirdy, however, refutes these allegations by pointing out that the administrators to which the plaintiff referred had already achieved tenure prior to their transfers to the faculty which was not the plaintiff's situation. The plaintiff has never disputed the validity of these assertions that he

was not in fact in the same circumstances as the college deans referred to in his complaint. This being the case, it is evident that the factual basis for the equal protection claim simply did not exist. We therefore conclude that the constitutional claims have not been established and thus the doctrine of sovereign immunity operates as a bar to subject matter jurisdiction.

With respect to the monetary claim for a salary increase, the plaintiff admittedly failed to present his claim to the commissioner of claims. General Statutes §§ 4-141, 4-142; see *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 604, 376 A.2d 71 (1977). " 'Since we are not aware of any legal barrier to the presentation of the plaintiff's claim to the commissioner or to his favorable action upon it, we cannot assume that recourse to that procedure would necessarily have been futile or inadequate.' *Sullivan* v. *State,* [189 Conn. 550, 559, 457 A.2d 304 (1983)]. The failure of the plaintiffs to pursue this administrative remedy precludes an adjudication of the constitutional claim they have raised. Id. No determination of whether a constitutional necessity exists that would supersede the state's sovereign immunity can be made when the alternative procedure available through the claims commissioner, which might have provided the relief sought, has been ignored. Id.; see *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 186, 286 A.2d 299 (1971)." *Doe* v. *Heintz,* supra, 37. "[B]ecause exhaustion of such an alternative means of relief is a prerequisite to our jurisdiction to consider [the] constitutional claim;" id., 34; we conclude that the trial court lacked jurisdiction and, therefore, properly granted the motion to dismiss.

Finally, in view of the absence of subject matter jurisdiction, we need not consider the plaintiff's claim of promissory estoppel.

There is no error.

In this opinion the other justices concurred.