Frank VIOLISSI, Plaintiff,

v.

**CITY OF MIDDLETOWN, Thomas Serra, Maria Madsen Holzberg, Lawrence W. Kinch, Larry Smith, John Suchocki, and Mark Leahy, Defendants.**

No. 3:96CV01694 (GLG).

United States District Court, D. Connecticut.

Jan. 12, 1998.

Albert McGrail, Paul H. Gamache, McEleney & McGrail, Hartford, CT, for Plaintiff.

James M. Sconzo, Michael Joseph Whalen, Brian P. Leaming, Halloran & Sage, Hartford, CT, for Defendants.

### Memorandum Decision

GOETTEL, District Judge.

In a thirteen-count complaint, plaintiff Frank Violissi challenges the City of Middle-

town's failure to promote him to police lieutenant due to alleged irregularities in the examination process. Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331, based upon his claim under 42 U.S.C. § 1983.

Pursuant to Rule 56, Fed.R.Civ.P., defendants have moved for summary judgment as to all counts of plaintiff's amended complaint [**Doc. #.33**]. Plaintiff has responded to defendants' motion, but has also moved for a continuance, pursuant to Rule 56(f), in order to complete discovery of certain of the named defendants [**Doc. # 41**].[1]

For the reasons set forth below, plaintiff's motion for a continuance will be denied. Defendants' motion for summary judgment will be granted as to Counts One and Two. The remaining counts of plaintiff's amended complaint are state-law causes of action. Having dismissed all of plaintiff's federal claims, we decline to exercise supplemental jurisdiction over the remaining state-law claims and will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(4).

*Facts*

At all times relevant to this action, plaintiff was employed as a sergeant for the Middletown Police Department. On or about November 14, 1994, plaintiff applied for promotion to lieutenant. As described in the written announcement and pursuant to the collective bargaining agreement between the City and the Local Police Union, the promotional testing process consisted of two components: first a written examination, which would comprise 50% of a candidate's

rating, followed by an oral examination administered to all candidates who passed the written examination, which would comprise the other 50% of the rating. A candidate had to receive a passing score of 70% on each component to be placed on the list of eligibles, from which the Mayor would make an appointment for promotion.

On the written police lieutenant examination, plaintiff obtained the highest score of any of the applicants and obtained the right to proceed with the oral examination. On January 18, 1995, the evening prior to plaintiff's scheduled oral examination, plaintiff received an anonymous telephone call in which the caller warned plaintiff that "they were going to flunk" him on the oral exam. Plaintiff reported this to the Assistant State Attorney the following day. On January 19, 1995, plaintiff sat for and completed the oral examination, which was administered by a three-member panel consisting of defendants Smith, Suchocki, and Leahy, all law enforcement officers from other jurisdictions.[2] On January 20, 1995, plaintiff was informed that he did not receive a passing score on the oral examination and, therefore, would not be placed on the list of eligibles for promotion to lieutenant.

After filing a grievance against the City for violating the Collective Bargaining Agreement, plaintiff obtained copies of his oral examination sheets. Each of the three examiners completed a separate evaluation sheet, rating each candidate in ten different categories. The sheet completed by defendant Smith appeared to have been altered in that two scores had been changed.[3] Addi-

---

1. Plaintiff also sought additional time to provide an affidavit of his recently retained expert witness. Plaintiff, however, has recently submitted the expert's affidavit in opposition to the motion for summary judgment.

2. Defendant Smith was a captain with the Hamden Police Department, defendant Leahy was a captain with the Connecticut State Police, and defendant Suchocki was a captain with the West Hartford Police Department.

3. The police lieutenant candidates were rated in 10 different categories, on a scale of well-above average (9 points) to well-below average (1 point). The points for all categories receiving a particular rating were then totalled. On the one rating sheet at issue, plaintiff received no marks

in the well-above-average category, two in the above-average category (worth 7 points each for a total of 14), two in the average category (worth 5 points each for a total of 10), two in the below-average category (worth 3 points each for a total of 6), three in the well-below-average category (worth 1 point each), and one mark of "not applicable." Thus, his total score given by examiner Smith was 33. The totals in the above-average column and average column had been changed, although it is not known when these changes were made—they could have been errors in addition changed at the time examiner Smith was totalling the columns or they could have been done at a later date. The other two examiners each gave plaintiff a score of 52. The scores of the three examiners were then averaged as a result of which, plaintiff received an oral

tionally, according to the rating sheet, plaintiff was incorrectly rated on "initiative," a category that did not apply to police lieutenant, rather than "self-confidence," a category which should have been rated.[4] Further, examiner Smith incorrectly marked the category of "educational background" as "not applicable," therefore giving plaintiff a "0" in this particular category.[5] Out of the sixteen applicants who took the oral examination, only plaintiff's rating sheet contained such errors.

After the errors on examiner Smith's rating sheet were brought to Smith's attention some six months later, Smith corrected his sheet such that the score given for "initiative" was moved to the "self-confidence" category, and the "not applicable" rating given to educational background was changed to a rating of "well below average," which added one point to Smith's rating of plaintiff, which was still below passing. Defendant Smith characterizes these mistakes as "inadvertent" resulting from the fact that he is left-handed.[6]

Plaintiff alleges that, had his name been on the list of eligibles, the Chief of Police and Deputy Chief would have recommended him for promotion to lieutenant, and the Mayor (defendant Serra) would have promoted him. However, because his name was not on the list of eligibles due to his failing grade on the oral examination, plaintiff was not eligible for promotion. The eligibility list remained in effect for two years. Six promotions to lieutenant were made from the list. On December 9, 1996, after plaintiff notified the City that he intended to file suit, plaintiff received notice that his name had been placed on the eligibility list. [It is unclear from the record how the City circumvented the problem of plaintiff's failing grade on the oral examination. The notice to plaintiff simply stated that this action was taken at the Mayor's direction.] No further promotions, however, were made from this list prior to its expiration on January 20, 1997.

Based on these events, plaintiff filed the instant lawsuit, asserting the following claims against defendants: (1) denial of due process under the State and Federal Constitutions, in violation of 42 U.S.C. § 1983; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) intentional interference with contractual expectancies; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligent employee practices, in violation of C.G.S.A. § 31–49; (8) blacklisting, in violation of C.G.S.A. § 31–51; and (9) indemnification by the City, pursuant to C.G.S.A. §§ 7–101a, 7–465. Defendants now seek summary judgment on all counts of plaintiff's amended complaint.

In opposition to the motion for summary judgment, plaintiff has supplied the affidavit of his expert witness, Joel P. Wiesen, Ph.D., who concluded that the oral examination was not administered in accordance with generally accepted professional standards for civil service examinations.

*Discussion*

Summary judgment may only be granted when the court determines from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that there is no genuine issue of material fact to be tried and that the moving party is entitled to summary judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. *See*

---

exam score of 45.7, or 67%, which was not considered passing.

4. As noted in footnote 3, plaintiff was to have been rated in 10 categories. The rating sheet, however, contained four additional areas, which did not apply to police lieutenant. Plaintiff was rated in one of the non-applicable areas, "initiative" rather than "self-confidence." Plaintiff asserts that, since 1986, he has served as commander of the City's high drug profile unit and has been the recipient of numerous awards and citations. In his 27 years of service, he has never been criticized for lacking self-confidence.

5. Plaintiff holds a high school diploma and in 1989 graduated from the prestigious FBI National Academy, a distinction which many of the other candidates did not possess.

6. Plaintiff has not yet deposed Smith and has requested that this Court defer ruling on this motion until he has had an opportunity to do so. Because of our disposition of the state-law claims, we have denied plaintiff's motion for a continuance.

*Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The burden of establishing that no genuine factual dispute exists rests with the party seeking summary judgment. *Gallo*, 22 F.3d at 1223. In determining the existence of a genuine issue of material fact, we view the evidence in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gallo*, 22 F.3d at 1223. Thus, in ruling on this motion for summary judgment, we consider the facts in the light most favorable to the plaintiff.

■ We begin by considering plaintiff's due process claims in Count One, which are the only federal question claims in his complaint. Plaintiff alleges that the defendants' actions in not placing him on the eligibility list for promotion and their failure to promote him were in violation of the due process clauses of the United States and Connecticut Constitutions, in violation of 42 U.S.C. § 1983.

The threshold question in analyzing a Fourteenth Amendment due process claim under the United States Constitution is whether the plaintiff has sufficiently articulated the deprivation of a protected property or liberty interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake.... We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Id.* at 571 (citations omitted).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined

by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577. *See also Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 782 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). "While state law defines the underlying substantive interest, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Ezekwo*, 940 F.2d at 782 (citations and internal quotations omitted).

This Court considered a similar issue in *LeFebvre v. Shanley*, No. 3:96CV1277 (PCD) (Ruling on Motion for Summary Judgment, Oct. 9, 1997) (Dorsey, J.), and found that the plaintiff, an Enfield police officer who was number one on the sergeant promotion list but passed over for promotion after the top three candidates were interviewed, did not have a protectible property interest in the promotion. Likewise, in *Andreucci v. City of New Haven*, 916 F.Supp. 146 (D.Conn.1996), we held that demoted firefighters, who had earlier been promoted from an expired eligibility list, had no legitimate claim of entitlement to their promotions under state law, because their promotions were unlawful from the start.

In *Ezekwo*, relied upon by plaintiff, the Second Circuit addressed the issue of whether a hospital resident had a property interest in the chief resident position. Recognizing that the absence of a written contractual provision did not foreclose the possibility that she possessed a "property" interest in the position, the Court looked to whether the parties through their conduct and practice had created additional rights and duties. *Ezekwo*, 940 F.2d at 782. Noting that not every breach of a contractual right rises to the level of a deprivation of property, the Court nevertheless found that the "policies and practices" of the institution were such that an entitlement to the position of chief resident existed. *Id.* at 783. The Court held that in determining which interests are afforded such protection, a court must look to whether

the interest involved would be protected under state law and must weigh the importance to the holder of the right. *Id.* (citing *Brown v. Brienen,* 722 F.2d 360, 364 (7th Cir.1983)) (internal quotations omitted). In that case, the institution had adopted a policy and practice of awarding the chief resident position to all third year residents on a rotating basis. The method of selection was not haphazardly applied. It was an established practice which was expressly highlighted in the institution's informational documents. Additionally, the plaintiff Ezekwo was told that she would rotate through this position.

Unlike the facts in *Ezekwo,* in the instant case, there was no policy and practice that controlled who would receive a promotion or the criteria that the Mayor had to apply in selecting a candidate for promotion from the list of eligibles. There certainly was nothing that required the promotion of the candidate receiving the highest score on only the written portion of the examination. The written examination was only 50% of a candidate's ranking.

The City Charter provided that all classified employees are to be appointed by the Mayor in accordance with the City Personnel Rules and Classification Plan, and that the selection and testing process shall likewise be conducted in accordance with the Personnel Rules. The Personnel Rules established the Mayor as the appointing authority, with final approval of all promotions. There is nothing in the Rules that required the Mayor to appoint the highest ranking candidate or any other candidate. Thus, regardless of rank order, the decision as to whom to promote is a matter committed to the unfettered discretion of the Mayor.

In *Dube v. State University of New York,* 900 F.2d 587 (2d Cir.1990), *cert. denied sub nom Wharton v. Dube,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991), in which the plaintiff challenged the lack of procedural due process in the defendant's promotion and review procedures, the Second Circuit held that, "[b]ased on the record before us, which indicates only that [plaintiff] was entitled to be considered for tenure in accordance with established contractual procedures, we conclude that [plaintiff] has failed to meet the threshold requirement of establishing a protected 'liberty' or 'property' interest." 900 F.2d at 599 (citing *Clemente v. United States,* 766 F.2d 1358, 1364–65 (9th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986) for the proposition that procedural requirements, which provide no significant restrictions on decision-maker or articulable standards to guide his discretion do not establish a Fourteenth Amendment property interest).

■ Plaintiff has sought a continuance under Rule 56(f), Fed.R.Civ.P., to depose the former Mayor in order to ascertain whether he would have appointed plaintiff to the lieutenant's position had plaintiff been on the list of eligibles. Rule 56(f) provides that if a party opposing the motion cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had. Plaintiff has filed such a motion, supported by the sworn affidavit of his attorney.[7]

The sole purpose of former Mayor Serra's deposition would be to ascertain whether the former Mayor would confirm his alleged conversation with plaintiff that had plaintiff's name been on the list of eligibles (although he would have no way of knowing how plaintiff would have ranked), he would have appointed him to the position of police lieutenant. Because we are required to view all

---

7. Plaintiff's attorney attests under oath that, because of ongoing settlement discussions and the plaintiff's limited financial resources, discovery was not pursued. The revised scheduling order provides for a discovery deadline of March 31, 1998. Therefore, plaintiff asks the Court to defer ruling on the motion for summary judgment until he has had an opportunity to depose defendants Serra, the former mayor of Middletown, defendant Kinch, the personnel director, defendant Holzberg, the current mayor of Middletown, and defendant Smith. The only additional discovery sought by plaintiff relating to plaintiff's due process claims, however, is the deposition of defendant Serra. Because we do not reach the merits of defendants' motion for summary judgment as to the remaining counts, which we are dismissing without prejudice, plaintiff's request for a continuance to pursue discovery of the other defendants is denied.

facts in the light most favorable to plaintiff in ruling on this motion for summary judgment, we have accepted plaintiff's sworn statement that the Mayor did in fact tell him that he would have been promoted. The Mayor's testimony in this regard would add nothing to the facts that we have assumed to be true for purposes of ruling on this motion for summary judgment. Thus, we deny plaintiff's request for a continuance to depose the former Mayor prior to our ruling on this motion for summary judgment.

Even if the Mayor were to testify that he would have promoted the plaintiff, this after-the-fact statement does not rise to the level of a "policy or procedure" of the City, or an interest entitled to protection under state law, similar to that found in *Ezekwo*.[8] The facts of this case are more akin to those of *LeFebvre*, in which this Court found that a promotional candidate who ranked number one on the promotional list, but who was passed over for promotion after the top three candidates were interviewed, had no protectible property interest in a promotion. *See also United States v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir.), *cert. denied sub nom Earth v. City of Chicago*, 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989) (holding that, because of the discretion involved in making promotions from sergeant to lieutenant, an applicant does not have a legitimate claim of entitlement to a promotion); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1486 (11th Cir.1992) (holding that a prospective promotion is not a protected property interest), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *but see Paskvan v. City of Cleveland Civil Service Comm'n*, 946 F.2d 1233, 1236 (6th Cir.1991) (holding that the city's practice of always promoting the first ranked candidate created an implied contract or mutually explicit understanding for promotion in rank order). Thus, we find that plaintiff has failed to allege a property interest entitled to Fourteenth Amendment due process protections.

■ Likewise, we grant defendants' motion for summary judgment on plaintiff's due process claims under the Connecticut Constitution. The United States and Connecticut Constitutions contain the same due process provisions and are given the same effect. *Barde v. Board of Trustees of Regional Community Colleges*, 207 Conn. 59, 64, 539 A.2d 1000 (1988); *Fennell v. City of Hartford*, 238 Conn. 809, 820, 681 A.2d 934 (1996). We find no basis for distinguishing plaintiff's claims under the Connecticut Constitution from those under the United States Constitution.

Therefore, we grant defendants' motion for summary judgment as to Count One of plaintiff's amended complaint. Having granted summary judgment in defendants' favor on Count One, we also grant summary judgment in favor of defendants on Count Two, which is plaintiff's indemnification claim relating to his due process claims.

Having dismissed all of plaintiff's federal claims, we decline to exercise supplemental jurisdiction over the remaining state-law claims, which we dismiss without prejudice. Therefore, we deny plaintiff's motion for a continuance to take additional discovery with respect to these state-law counts.

*Conclusion*

Accordingly, defendants' motion for summary judgment **[Doc. # 33]** is GRANTED as to Counts One and Two of plaintiff's amended complaint, and the remaining claims are dismissed without prejudice. Plaintiff's motion for a continuance **[Doc. # 41]** is DENIED.

SO ORDERED.

■

---

8. Indeed, we note that the Personnel Rules prohibit the Mayor from making any statements or promises to any promotional candidates concerning permanent or guaranteed employment. (Section 6, Personnel Rules dated December 4, 1992).