[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 20, 1997, the plaintiffs, RJM Group, Robert McNiff and Mary McNiff, filed a complaint against the defendants, the American Association of Franchises and Dealers (AAFD), Mark Stevens, Todd Kabes, Stuart Freeman and Joseph Chambers. The plaintiffs allege the following facts in their complaint.
The RJM Group, Inc. is a Connecticut corporation doing business in Connecticut as "The Wedding Pages." Robert J. McNiff and Mary McNiff are employees of RJM. Mark Stevens, Todd Kabes, Stuart Freeman and Joseph Chambers are individuals doing business as "The Wedding Pages" in their respective states of Arizona, Texas, New York and Illinois. In December, 1996, an entity known as the Wedding Information Network, Inc., (WPIN) filed suit against RJM and the McNiffs in the United States District Court for the district of Nebraska. WPIN was the franchise of "The Wedding Pages" throughout the United States. Both RJM and the individual defendants were franchisees of WPIN. Also, all the CT Page 3894 individual defendants and RJM are members of the American Association of Franchises and Dealers (AAFD), which is the trade association for the Wedding Pages.
Prior to the suit, AAFD and its individual members agreed that RJM would attempt to force WPIN to file suit. In doing so, this would allow RJM, AAFD, and the individual members to challenge the WPIN franchise agreement. In connection with this plan, AAFD retained the Chicago law firm of Vedder, Price, Kaufman Kammholz (Vedder) to defend AAFD and its individual members, and to challenge the WPIN franchise agreement. Once the WPIN suit was filed, Vedder retained Nebraska counsel, Cassem, Tierney, Adams, Gotch Douglass (Cassem) on behalf of RJM and AAFD. Vedder and Cassem rendered bills for legal services to the McNiffs and RJM, who, in turn, sought pro rata contributions from AAFD and the individual defendants. The total amount of the legal bills was $39,756.92.
RJM alleges that they had an agreement, either express or implied, with AAFD and the individual defendants to share in the legal expenses of the WPIN v. RJM suit. Further, the defendants have breached that agreement to the detriment of RJM and the McNiffs, who are likely to be sued by Vedder and Cassem in Connecticut.
On December 11, 1997, the defendants filed a motion to dismiss the instant action for lack of personal jurisdiction. In support of said motion, the defendants filed a memorandum of law along with supporting affidavits executed by each of the individual defendants. In response, the plaintiffs filed an objection to the motion to dismiss, along with an affidavit executed by Robert McNiff. On January 26, 1998, the defendants filed a reply memorandum to the plaintiffs' opposition.
"A motion to dismiss . . . has replaced the plea in abatement as the vehicle for challenging the court's jurisdiction . . . ."Concept Associates, Ltd. v. Board of Tax Review, 229 Conn. 618,625, 642 A.2d 1282 (1994). The motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). The motion to dismiss "admits all facts . . . well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) BardeCT Page 3895v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson,214 Conn. 256, 264, 571 A.2d 696 (1990). "Where, however . . . the motion is accompanied by affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Footnote omitted.) Barde v. Board of Trustees, supra, 207 Conn. 62; see also, Knipple v. Viking Communications Ltd., 236 Conn. 602, 608,674 A.2d 426 (1996).
The plaintiffs assert that, in the present case, the court has jurisdiction over the defendants pursuant to Connecticut's long arm statute, General Statutes § 52-59b, and such jurisdiction is not precluded by the due process clause. "When a [nonresident] defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.)Knipple v. Viking Communications Ltd., supra, 236 Conn. 606. General Statutes § 52-59b, Connecticut's long arm statute provides in part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state. . . ." Although the term "transacts any business" is undefined in the statute (52-59b), our Supreme Court construes the term to embrace "a single purposeful business transaction."Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981). See also Gaudiov. Gaudio, 23 Conn. App. 287, 298, 580 A.2d 1212, cert. denied,217 Conn. 803, 584 A.2d 471 (1990). "In determining whether [a plaintiff's] cause of action arose from the [defendant's] transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." Zartolas v. Nisenfeld, supra, 184 Conn. 477.
With regard to the due process step of the analysis, the CT Page 3896 court must determine whether a nonresident defendant has certain "minimum contacts . . . such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'" International Shoe Co. v. Washington, 326 U.S. 310, 316
(1945). "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness."United States Trust Co. v. Bohart, 197 Conn. 34, 41,495 A.2d 1034 (1985). In determining foreseeability, "it is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here." Frazer v. McGowan, 198 Conn. 243, 249, 502 A.2d 905
(1986). In the complaint, the plaintiffs allege that the defendants entered into either an express or implied agreement to share in the legal expenses of the plaintiffs' lawsuit against the franchise of the Wedding Pages, WPIN. Viewing the record in the light most favorable to the plaintiffs, it appears that the defendants entered into an agreement with the plaintiffs, and in doing so, made telephone calls, wrote and sent faxes to the plaintiffs in Connecticut. The plaintiffs contend that the agreement, phone calls, letters and faxes are sufficient minimum contacts with Connecticut to confer jurisdiction in accordance with General Statutes § 52-59b, and the principles of due process.
In Rosenblit v. Danaher, 206 Conn. 125, 537 A.2d 145 (1988), the Supreme Court held that a defendant attorney's act of representing his former client at a single meeting in Connecticut did not satisfy the "transacting business" standard nor the "minimum contacts" standard under due process. Further, the Connecticut Superior Courts, on facts analogous to those in the present case, have granted motions to dismiss for lack of personal jurisdiction. R.O.I Dev. Corp. v. Weiss, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 391584 (December 21, 1992, Dunn, J.) (defendant executed a contract in Connecticut to install plumbing fixtures in Massachusetts; this did not satisfy the "transacting business" and "minimum contacts" standards) (Loctec Corporation v. HawkGolf Bag Company, Superior Court, judicial district of Danbury, Docket No. 323051 (June 27, 1996, Moraghan J.) (defendant entered a contract during a phone call or fax communication to purchase goods from a Connecticut plaintiff; this did not satisfy the "minimum contacts" standard.)
In the present case, the defendants' only contact with CT Page 3897 Connecticut is their alleged agreement with the plaintiffs, whereby they promised to reimburse the defendants for their expenses incurred while defending the RJM v. WPIN lawsuit. For the most part, the agreement here is analogous to a promissory note that is executed or made payable in Connecticut. InDiversified Financial Sys. v. Castelli, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 465911 (April 25, 1995, Handy, J.), the court held that the signing of a promissory note in Connecticut, without more, does not satisfy minimum contacts.
Once again, according to the documents submitted, the agreement at issue herein was entered into by telephone, letter, or by fax, or a combination thereof. There is no indication that any meetings took place in Connecticut, or that the contract was executed in Connecticut, or that the defendants ever entered into Connecticut. There also is no evidence that any of the defendants conducted, advertised or solicited business in Connecticut.
Pursuant to the holdings of the cases cited above, the defendants' single contact with Connecticut (i.e., the agreement to reimburse legal fees) does not meet the "transacting business" or "minimum contacts" standards. Thus, this court lacks personal jurisdiction over the defendants. Accordingly, the motion to dismiss is granted.
Leheny, J.