[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court are the defendant's motion to dismiss on forum non conveniens grounds and the plaintiffs' motion to exclude from the court's consideration the affidavit of John R. Gregory, filed in support of the defendant's motion. The plaintiffs are Tilcon Inc. (Tilcon), a Delaware corporation, the principal place of business of which is Connecticut, and its subsidiary, Tilcon New York Inc. (Tilcon NY), also a Delaware corporation, the principal place of business of which is New York. On August 27, 1998, the plaintiffs filed a three-count complaint against the defendant, First Union National Bank (First Union), which has its principal place of business in North Carolina and several offices in Connecticut, alleging violation of the Uniform Commercial Code (UCC), breach of contract and negligence.
The facts relevant to the disposition of the parties' respective motions are as follows. Tilcon, the parent corporation of Tilcon NY, establishes, manages and controls the banking, financial and accounting activities of Tilcon N.Y. and other Tilcon subsidiaries. Thus, "in order to centralize and provide uniformity, . . . Tilcon established a master disbursing account with First Union." (Complaint ¶ 5.) "Pursuant to that account, Tilcon has a master account, and each of its subsidiaries [including Tilcon NY] has a subaccount off of the CT Page 12620 master disbursing account. The master account is managed by Tilcon in Connecticut and the statements and other documents relating to the account are sent to Tilcon in Connecticut and to its appropriate subsidiaries in other states, including Tilcon New York Inc." (Complaint ¶ 5.) Furthermore, each subaccount "is maintained at zero ($0) balance in that all funds in each subsidiary's subaccount are funded daily by Tilcon's master account. As checks are presented for payment on any subsidiary's subaccount, including Tilcon New York's, funds are drawn from Tilcon's master account to cover the checks." (Complaint ¶ 6.) Signature exemplars of those individuals authorized to sign Tilcon N.Y. checks are on file with First Union. (Complaint ¶ 12.)
Sometime before September 22, 1997, Jessie McRae,[1] a temporary employee at Tilcon NY, stole ten blank checks from the company. He then forged or caused to be forged the signatures of two authorized Tilcon employees on six of these checks, which were "ultimately presented to and cashed by Defendant First Union." (Complaint ¶ 11.) Each forged check was drawn on funds from Tilcon's master account "and First Union deducted the amount of each of the checks from Tilcon' s account" (Complaint ¶ 12.), for a combined total deduction of $446,787.72.
Tilcon and Tilcon N.Y. instituted the present action against First Union to recover these funds. In count one, Tilcon and Tilcon N.Y. allege that "First Union's conduct in cashing, paying and charging Tilcon's account on such forged checks is a violation of the laws and UCC of Connecticut, as well as New York, New Jersey and North Carolina." (Complaint ¶ 17.) Count two alleges that "First Union's conduct in honoring the forged checks and charging Tilcon's account for the amounts used to cover the forged checks is in violation of the agreement between First Union and Tilcon regarding such accounts." (Complaint ¶ 22.) Count three alleges that First Union has a duty of ordinary and due care to Tilcon and Tilcon N.Y. and that it breached that duty when it failed to compare the signatures on the forged checks with the exemplars it had on file, thus proximately causing damages to Tilcon in an amount in excess of $466,787.72.
1. The Gregory Affidavit
The first issue before the court is whether to grant Tilcon and Tilcon NY's motion to exclude the affidavit of John R. Gregory, which was filed in support of First Union's motion to CT Page 12621 dismiss. In moving to exclude the affidavit, Tilcon and Tilcon N.Y. argue that the affidavit is based on inadmissible hearsay, not personal knowledge, and therefore, should not be considered by the court. In response, First Union argues that Tilcon and Tilcon N.Y. cannot attack the affidavit after explicitly conceding its allegations in their complaint, a sworn written statement by their corporate officer and in concessions made in their objection to the motion to dismiss. First Union further argues, in the alternative, that the affidavit is proper under the business record or the residual exception to the hearsay rule.
Practice Book § 10-31 provides in relevant part that the motion to dismiss "shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." Practice Book § 10-31(a); Barde v. Board of Education, 207 Conn. 59, 62 n. 1, 539 A.2d 1000 (1988); Armore v. Frankel, 29 Conn. App. 565,570, 616 A.2d 1152 (1992). Though no Connecticut appellate court has addressed whether an affidavit in support of a motion to dismiss must be based on personal knowledge, several trial courts have addressed the issue. See Seldon v. Dunn, Superior Court, judicial district of New London at Norwich, Docket No. 112255 (April 14, 1998, Solomon, J.) (affidavit not based on personal knowledge constitutes inadmissible hearsay); Winkelman v. Dohm,
Superior Court, judicial district of Waterbury at Waterbury, Docket No. 096682 (April 27, 1992, Barnett, J.) (6 Conn. L. Rptr. 381, 382) ("statements made in an affiant's best knowledge and belief are insufficient"); Mills v. Conn. Light Power Co.,
Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 030813 (December 5, 1990, Fuller, J.) ("affidavits must be based on personal knowledge and contain facts admissible in evidence")
In Winkelman the court held that an affidavit in support of a motion to dismiss must meet the same requirements as an affidavit in support of a motion for summary judgment. Winkelman v. Dohm,
supra, 6 Conn. L. Rptr. 382. The statements contained in the affidavit must be based on personal knowledge. Id. The court reasoned: "Practice Book [§ 10-31] allows affidavits as to facts not apparent on the record. A similar requirement of factual assertions is contained in Practice Book [§ 17-46] dealing with the requirements of an affidavit in motions for summary judgment. In summary judgment situations, affidavits based on belief and knowledge would clearly be inadequate.Farrell v. Farrell, 182 Conn. 34, 39 (1980). And the same rule CT Page 12622 should pertain to motions to dismiss where affidavits are utilized to supply jurisdictional facts. See Barde v. Board ofTrustees, 207 Conn. 59, 61-62 (1988). Moreover, the very concept of an affidavit is a document stating facts within the knowledge of the affiant. Rosenblit v. Danaher, 206 Conn. 125, 136-37
(1998)." Winkelman v. Dohm, supra, 6 Conn. L. Rptr. 382; see generally 3 Am.Jur.2d § 23 (1986) ("an affidavit, the statements of which are alleged on information and belief, is insufficient in any instance where the affiant is required to make the affidavit as to the substance of the truth of the facts stated, and not merely as to good faith"); 2A C.J.S. § 49 (1972) ("generally an affidavit must show affiant's personal knowledge")
The affidavit of John R. Gregory in the case at bar suffers from the same fatal defect as the affidavit in Winkelman. The affiant is First Union's assistant vice president and investigator for corporate security services. Gregory attests that "[a]ll of the following statements are true and accurate to the best of my knowledge, information, and belief." (Gregory Affidavit, 10/30/98, ¶ 1.) He further attests that his affidavit is based upon his findings during his investigation of Tilcon's and Tilcon NY's claims to First Union, which was conducted between January 7 and January 21, 1998. (Gregory Affidavit, 10/30/98, ¶ 4.) Gregory's investigation "relied in part on the findings of the Town of Teaneck, New Jersey Police Department and the Newark Field Office of the U.S. Secret Service." (Gregory Affidavit, 10/30/98, ¶ 4.) Nowhere in the affidavit does Gregory attest or aver that any of the statements contained therein are based on his personal knowledge.
First Union's argument that Tilcon and Tilcon N.Y. have conceded the facts contained in the Gregory affidavit is unavailing because the court's focus, in determining whether an affidavit is valid, is on whether the statements are based on personal knowledge and not on whether the party against whom the affidavit is being offered has conceded the facts contained therein.[2] See Winkelman v. Dohm, supra, 6 Conn. L. Rptr. 382. For all of the above reasons, this court finds the Winkelman
decision persuasive and grants the motion to exclude the Gregory affidavit in considering the motion to dismiss because the statements contained in the affidavit are not based on personal knowledge.
2. The Motion to Dismiss
CT Page 12623
The motion to dismiss is the vehicle by which a defendant may contest the court's jurisdiction. Practice Book § 10-30;Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli,Inc. v. Town of Branford, 247 Conn. 407, 410-11, 722 A.2d 271
(1999). "Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Barde v. Board of Trustees, supra,207 Conn. 62.
First Union argues that New Jersey, and not Connecticut, is the proper forum to litigate the present case because the events giving rise to the action occurred in New Jersey and witnesses, evidence and records are all outside of Connecticut, beyond Connecticut's subpoena power. First Union further argues that adjudication in Connecticut would deprive it of the right to apportionment among other identified tortfeasors because of the limitations of Connecticut's service of process. In response, Tilcon and Tilcon N.Y. argue that the injury occurred in Connecticut, evidence and witnesses are within the state and that First Union has not met its heavy burden to overcome Tilcon and Tilcon NY's chosen forum.
"The common law principle of forum non conveniens provides that a court may resist imposition upon its jurisdiction even when it has jurisdiction." (Emphasis in original; internal quotation marks omitted.) Union Carbide Corp. v. Aetna Casualty Surety Co., 212 Conn. 311, 314, 562 A.2d 15 (1989); see alsoPicketts v. International Playtex, Inc., 215 Conn. 490, 504 n. 13, 576 A.2d 518 (1990). "[It] is an exception to the general rule that a court must hear and decide cases over which it has jurisdiction by statute or constitution, and recognizes the discretion of a court, in some few instances, where jurisdiction and venue are proper . . . to dismiss a suit because the court has determined that another forum is better suited to decide the issues involved." Sabino v. Ruffolo, 19 Conn. App. 402, 405-06,562 A.2d 1134 (1989). "[T]he central principle of the forum non conveniens doctrine [is] that unless the balance is strongly inCT Page 12624favor of the defendant, the plaintiff's choice of forum shouldrarely be disturbed." (Emphasis in original; internal quotation marks omitted.) Picketts v. International Playtex, Inc., supra,215 Conn. 500. The defendant bears the burden of demonstrating why the presumption favoring the plaintiff's choice of forum should be disturbed. Id., 502.
The court's inquiry as to whether a case should be dismissed on the ground of forum non conveniens proceeds according to a four step process: "(1) the court should determine if an adequate alternative forum exists which possesses jurisdiction over the whole case; (2) the court should consider all relevant factors of private interest with a strong presumption against disturbing the plaintiff's initial forum choice; (3) if the balance of private factors is equal, then the court should consider if any public interests tip the balance toward the foreign forum; and (4) if the public interest tips the balance toward the forum, then the court must make sure the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." (Internal quotation marks omitted.) Rosinka Joint Venture v.Williams, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 132624 (September 16, 1993, Lewis, J.) (8 C.S.C.R. 1017). The overriding inquiry is not, however, "whether some other forum might be a good one, or even a better one than the [plaintiff's] chosen forum. The question to be answered is whether the [plaintiff's] chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved." (Internal quotation marks omitted.)Picketts v. International Playtex, Inc., supra, 215 Conn. 501. Therefore, the court "should place its thumb firmly on the [plaintiff's] side of the scale, as a representation of the strong presumption in favor of the [plaintiff's] chosen forum, before attempting to balance the private and public interest factors relevant to a forum non conveniens motion." Id., 502.
The court must determine, as a threshold matter, whether an alternative forum exists. Picketts v. International Playtex,Inc., supra, 215 Conn. 504. First Union argues that the state of New Jersey would serve as an adequate alternative forum because Tilcon and Tilcon NY's contacts with Connecticut are an insufficient basis upon which a Connecticut court may maintain jurisdiction. Specifically, First Union claims that the only connections the parties have to the state of Connecticut are that Tilcon has its principal place of business here, and that First Union has several offices in the state. CT Page 12625
Examining the complaint and relevant supporting affidavits in a manner most favorable to the nonmoving party, the court concludes that the present action has a much deeper basis in Connecticut than the mere fact that some of the parties conduct business in the state. The complaint sets forth three causes of action, each relating directly to an injury suffered by Tilcon, the Connecticut residency of which is not disputed by First Union. Tilcon in its complaint also alleges the injury occurred when First Union withdrew the funds from an account maintained by Tilcon in the state of Connecticut. According to the affidavit of Peter M. Lohne, executive vice president and secretary of Tilcon, Tilcon has a master disbursement account structure with various subaccounts therein with First Union. (Lohne Affidavit ¶ 3; see also Complaint ¶ 5.) Tilcon NY's subaccount is maintained at zero ($0) balance. (Lohne Affidavit ¶ 4; see also Complaint ¶ 6.) "As checks are presented for payment on any subsidiary's disbursing subaccount, including Tilcon New York Inc.'s, funds are automatically drawn from Tilcon's master account to cover the checks." (Lohne Affidavit ¶ 4; see also Complaint ¶ 6.)
Lohne further attests: "Because Tilcon New York's subaccount was a zero balance account, funded exclusively by Tilcon, the monies that were converted as a result of the forged checks in the instant case were monies from the master account of Tilcon." (Lohne Affidavit ¶ 5.) Additionally, "Tilcon's master account and the subaccounts thereto are administered by Tilcon from its headquarters in New Britain, Connecticut" and "[t]he records of Tilcon's master account and subaccounts are maintained in the regular course of business at Tilcon's headquarters in New Britain, Connecticut." (Lohne Affidavit ¶ 6.; see also Complaint ¶ 5.) Thus, not only is Tilcon a corporation which has its principal place of business in New Britain, Connecticut, but also the injury giving rise to the present action occurred within the state of Connecticut. The court also notes that First Union solicited Tilcon's business within Connecticut, which culminated in Tilcon establishing the master disbursement account with First Union. (Lohne Affidavit ¶ 8.)
First Union does not dispute any of the above facts. Rather, it shifts the focus to events leading up to the alleged injury, namely the facts that McRae was hired through a New Jersey employment agency (Complaint ¶ 7.) and worked in Tilcon's New York-New Jersey subsidiary. (Complaint ¶ 8.) Other CT Page 12626 information in the record indicates that McRae worked at Tilcon NY's New Jersey office and that the forged checks were presented to a New Jersey branch of a national bank. Although these facts demonstrate the adequacy of New Jersey as an alternative forum, they do not weigh against Connecticut as a proper forum in which to bring the present action.
The analysis now moves to an examination of the various private factors that First Union has identified as weighing in favor of dismissal. Courts consider the following private factors in deciding a motion to dismiss on the ground of forum non conveniens: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the possibility of viewing the accident scene if such viewing is appropriate to the action; (4) the enforceability of a judgment; (5) the relative advantages and obstacles to fair trial; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive."Miller v. United Technologies Corporation, 40 Conn. Sup. 457,463, 515 A.2d 390 (1986); see also Gulf Oil Corp. v. Gilbert,330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (same). These factors address the practical problems associated with trying a case and "the relative advantages and obstacles to a fair trial." Id.
With regard to the private factors, First Union argues that all the witnesses and evidence are located in New Jersey or North Carolina. In its memorandum of law, First Union identifies various potential witnesses, including: McRae[3], Earlene Shedrick, McRae's girlfriend, who allegedly cashed the six forged checks, the estate of Willie Shedrick, of which Shedrick is administrator and in which the funds from the forged checks were deposited,[4] Unitemp, a New Jersey employment agency, Mark Fusco, a Teaneck, New Jersey police detective, and Richard Reese, a special agent with the Newark field office of the U.S. Secret Service, who conducted the criminal investigation regarding events leading to the present litigation, and Tilcon N.Y. employees. Tilcon and Tilcon N.Y. argue in response that all the witnesses and evidence are not outside Connecticut. Referring to the complaint and the affidavit of Peter M. Lohne, they argue that the individuals who were responsible for the maintenance of the master disbursement account and subaccounts and the records thereof are within the state of Connecticut. (Lohne Affidavit ¶¶ 6, 7.) Lohne further attests that any records and witnesses within Tilcon's and Tilcon NY's control that are outside the CT Page 12627 jurisdiction will be produced in Connecticut. (Lohne Affidavit ¶ 8.) First Union's claim that the forum is inconvenient to potential witnesses is not enough. "[M]ore than a mere allegation to that effect is required . . . Rather, the defendant[s] must identify the key witnesses to be called and must make a general statement of what their testimony will cover. The burden is upon [the defendant] to give the names and locations of potential witnesses and the substance of their testimony . . . Sufficient information must be included in the affidavits to establish that the named witnesses are key witnesses who need to be called and that their testimony is material." (Emphasis added; citations omitted; internal quotation marks omitted.) Picketts v. InternationalPlaytex, Inc., supra, 215 Conn. 509-10. First Union has merely stated in general terms various potential witnesses. Although it has argued that they are potential witnesses and joint tortfeasors, First Union has not provided any affidavits attesting to the materiality and substance of their testimony.
Indeed, the court record to date indicates that the events surrounding the theft and negotiation of the checks are hardly in dispute. Thus, the testimony of the New Jersey witnesses does not appear to be "key" to this case.
Moreover, "[j]ust as [j]et travel and satellite communications have greatly altered the meaning of `non conveniens' . . . so too has the advent of the videotaped deposition greatly transformed the meaning of `compulsory process' in a forum non conveniens calculus. [V]ideotaped depositions frequently mike corporeal transportation of foreign witnesses unnecessary." (Citations omitted; internal quotation marks omitted.) Id., 511. Where, as in the present case, the movant has failed to provide supporting affidavits demonstrating the materiality of the potential witnesses' testimony and the location of the potential witnesses is in a nearby state, the court cannot conclude that these factors so materially prejudice First Union as to invoke the drastic remedy of transferring the case from Tilcon and Tilcon NY's chosen forum.[5]
First Union also argues that litigation in Connecticut would prevent it from apportioning its potential liability for "damages [that] are most directly attributable to [McRae's] and [Shedrick's] intentional frauds perpetrated against both Tilcon-NY and First Union . . . as well as Unitemp's negligence in hiring [McRae] in the first place." (Defendant's Memorandum of Law, 10/30/98, p. 8.) First Union contends that seeking CT Page 12628 indemnification or contribution after the present litigation ends is unsatisfactory "because First Union will already have been denied its right to reduce its liability proportionately . . . and to the extent the stolen money proves unrecoverable, First Union would have to pay the full judgment." (Defendant's Memorandum of Law, 10/30/98, pp. 15-16.) Tilcon and Tilcon N.Y. argue that, because McRae and Shedrick are most likely judgment proof, First Union is attempting to obtain a forum in which to minimize its potential liability at the expense of Tilcon's losses going unrecovered. (Sur-Reply of Plaintiffs to Defendant's Motion to Dismiss, 5/20/99, pp. 11-12.)
Were this case a straight negligence action, First Union's argument would be of greater concern to the court, at least as it implicates its ability to apportion liability between it and Unitemp, which appears to be the only financially viable apportionment defendant. But it is not. Counts One and Two are based on alleged violation of the UCC and breach of contract, respectively. It is clear that apportionment of liability would not be permitted in either Connecticut or New Jersey. See C.G.S. § 52- 572h(c); N.J.S.A. 2A:15-5.2. Cf. Lucas v. City of NewHaven, 184 Conn. 205, 212 (1981). Moreover, it is undisputed that First Union could seek contribution or indemnification from Unitemp in New Jersey if it is ultimately found liable to Tilcon and Tilcon NY. N.J.S.A. 2A:53A-1 to -5.
Thus, the "prejudice" to First Union from Tilcon's choice of Connecticut, its home state, as the forum for this case does not outweigh that firm thumb which the Supreme Court enjoins this court to place on the plaintiff's side of the scale. Picketts v.International Playtex, Inc., supra, 215 Conn. 502.
In Howard v. Colony Ford Truck Center, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 376427 (August 8, 1996, Corradino, J.) (17 Conn. L. Rptr. 338), the court denied the defendant's motion to dismiss on the ground that impleader considerations do not warrant the drastic remedy of dismissing the plaintiff's action. In that case, the defendant, a Rhode Island automobile dealership, sought to transfer the action on the basis of forum non conveniens because it wanted to implead the independent contractor who installed the plaintiff's windshield glass, the alleged cause of the plaintiff's injury. Although all of the events giving rise to the plaintiff's injury occurred in Rhode Island, and the party which the defendant sought to implead had no connection with the state of CT Page 12629 Connecticut, the court reasoned that the plaintiff's Connecticut residence and the strong factual nexus of the case to the state counseled against dismissal and against transfer to Rhode Island.
In the present case, First Union does not dispute Tilcon's Connecticut residency. Additionally, First Union has failed to present any supporting affidavits disputing the allegations in the complaint that Tilcon suffered an injury when First Union withdrew funds from the Tilcon master disbursement account. The fact that Tilcon and Tilcon N.Y. may have chosen Connecticut "precisely because it provides the plaintiff with certain procedural and substantive advantages, should be respected unless equity weighs strongly in favor of the defendant." (Citations omitted; internal quotation marks omitted.) Picketts v.International Playtex, Inc., supra, 215 Conn. 501. "Generally, in the absence of strong countervailing consideration, [t]he plaintiff's choice of forum [notwithstanding that it] may well have been chosen . . . because it provides the plaintiff with certain procedural or substantive advantages, should be respected. . . ." (Internal quotation marks omitted.) Drumm v.Brown, 245 Conn. 657, 688, 716 A.2d 50 (1998). Under the present circumstances, the court cannot say equity is so strongly in favor of First Union to require dismissal.
Furthermore, the present case does not involve unusual logistical or complex litigation concerns which would constitute "exceptional circumstances that demonstrate both inconvenience and hardship. " Sabino v. Ruffolo, supra, 19 Conn. App. 406. As the Connecticut Appellate Court has counseled, "except where extraordinary circumstances exist, the doctrine should not be applied by state courts. Such circumstances may include, in combination, or, in some instances standing alone, multiple parties, uniform child custody statutes or other uniform statutes, long arm statutes, complex litigation, or a great geographical distance between the original forum and the locus of the cause of action." Id., 410. As in the Howard case, none of these circumstances presently exist. See Howard v. Colony FordTruck Center, Inc., supra, 17 Conn. L. Rptr. 341-42 (discussing cases in which dismissal was warranted because of extraordinary circumstances)
Although the court need not balance the various private and public interests because the private interests identified by First Union do not weigh so heavily in favor of the alternative forum, the court notes in passing that where the plaintiff is a CT Page 12630 corporation doing business in Connecticut, as Tilcon surely is, and the injury occurred in this state, "it would indeed be a rare case where the plaintiff's choice of forum would not be honored."Resource Mortgage Banking, Ltd. v. Cityscape Financial Corp.,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 162269 (February 27, 1998, Lewis, J.) (21 Conn. L. Rptr. 406)
For all of the foregoing reasons the motion to dismiss is denied.
BY THE COURT
Shortall, J.