DEBORAH MALASKY *v.* METAL PRODUCTS
CORPORATION ET AL.
(15361)

Dupont, C. J., and Foti and Schaller, Js.

Argued December 16, 1996—officially released March 11, 1997

*Jon D. Berman*, with whom, on the brief, was *Gerald M. Beaudoin*, for the appellant (plaintiff).

*Brendan T. Flynn*, with whom, on the brief, was *Robert L. Hirtle*, for the appellee (defendant Sidney Greenberg).

DUPONT, C. J. This is a sexual harassment case arising out of the plaintiff's employment with the defendants, Metal Products Corporation (Metal) and Birken Manufacturing Company (Birken). The third defendant, Sidney Greenberg, owns and operates both companies. The two corporations have common ownership, management and staff.

Deborah Malasky, the plaintiff, began working for Metal in November, 1987, as a certification and quality control clerk. She later worked for Birken. She alleges that, beginning in February, 1992, she was repeatedly subjected to sexual harassment by other employees and supervisors until she was compelled to leave her position on March 5, 1993.

On May 7, 1993, the plaintiff, without the assistance of an attorney, filed a complaint, pursuant to General Statutes § 46a-82 (a),[1] with the commission on human

---

[1] General Statutes § 46a-82 (a) provides: "Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. After the filing of a complaint pursuant to this subsection, the commission shall serve

rights and opportunities (CHRO) against Metal and Birken, alleging that she had been sexually harassed, retaliated against and constructively discharged in violation of General Statutes §§ 46a-58 (a),[2] 46a-60 (a) (1), (4), and (8),[3] and Title VII of the Civil Rights Act of 1964. On June 8, 1994, the plaintiff received a release of jurisdiction from the CHRO pursuant to General Statutes § 46a-101,[4] permitting her to bring a civil action

upon the person claiming to be aggrieved a notice that: (1) Acknowledges receipt of the complaint and (2) advises of the time frames and choice of forums available under this chapter."

[2] General Statutes § 46a-58 (a) provides: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability."

[3] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . .

"(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . .

"(8) For an employer, by himself or his agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent, to harass any employee, person seeking employment or member on the basis of sex. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

[4] General Statutes § 46a-101 provides: "(a) No action may be brought in accordance with section 46a-100 unless the complainant has received a

against Metal and Birken in Superior Court pursuant to General Statutes § 46a-100.[5]

On October 28, 1994, the plaintiff filed an amended three count complaint against Metal, Birken and Greenberg individually, as owner and president of Metal and Birken. The first count alleges violations of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., by Metal and Birken only. The second and third counts allege intentional infliction of emotional distress and negligent supervision by all three defendants. As relief, the plaintiff claimed back pay, future earnings, reasonable attorney's fees, and punitive damages.

On January 16, 1995, the defendants moved to dismiss the complaint against Greenberg because the plaintiff had failed to exhaust her administrative remedies

release from the commission in accordance with the provisions of this section.

"(b) The complainant, or his attorney, may request a release from the commission if his complaint with the commission is still pending after the expiration of two hundred ten days from the date of its filing.

"(c) The executive director of the commission shall grant a release, allowing the complainant to bring a civil action, within ten business days after receipt of the request for the release, except that if a case is scheduled for public hearing, the executive director may decline to issue a release. The commission may defer acting on a request for a release for thirty days if the executive director of the commission, or his designee, certifies that he has reason to believe that the complaint may be resolved within that period.

"(d) Upon granting a release, the commission shall dismiss or otherwise administratively dispose of the discriminatory practice complaint pending with the commission without cost or penalty assessed to any party.

"(e) Any action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission."

[5] General Statutes § 46a-100 provides in pertinent part: "Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82, alleging a violation of section 46a-60 and who has obtained a release from the commission in accordance with section 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business . . . ."

against Greenberg, thereby ousting the court of subject matter jurisdiction. The trial court granted this motion over the plaintiff's objection on June 7, 1995. The plaintiff appealed to this court from the granting of the motion to dismiss.[6]

The plaintiff claims that the trial court improperly dismissed the action because (1) she did not fail to exhaust her administrative remedies as to Greenberg because he was expressly identified in her administrative complaint, (2) common law causes of action are not preempted by the administrative procedure, and (3) the administrative remedies available to her were inadequate.[7]

The trial court, following the reasoning of *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 491

[6] The case against Metal Products Corporation and Birken Manufacturing Company is still pending in the trial court.

[7] The relief the commission may grant is set forth in General Statutes § 46a-86 as follows: "(a) If, upon all the evidence presented at the hearing conducted pursuant to section 46a-84, the presiding officer finds that a respondent has engaged in any discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to cease and desist from the discriminatory practice and further requiring the respondent to take such affirmative action as in the judgment of the presiding officer will effectuate the purpose of this chapter.

"(b) In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, *the presiding officer may order the hiring or reinstatement of employees, with or without back pay*, or restoration to membership in any respondent labor organization, provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency.

"(c) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58 . . . the presiding

A.2d 1096 (1985), dismissed the action against Greenberg because the plaintiff had not exhausted her administrative remedies as to him. The *Sullivan* court had reasoned that, "[r]ead in its entirety, the CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO. It is the CHRO that is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination. That the act does not provide an unconditional private right of action for claimants like the plaintiff is underscored by the terms of General Statutes § 46a-99, which expressly provides such a direct right of action when the allegedly discriminatory employer is a state agency. The plaintiff, having failed to follow the administrative route that the legislature has prescribed for his claim of discrimination, lacks the statutory authority to pursue that claim in the Superior Court." Id., 216.

The trial court in the present case stated that "[t]here is no unconditional private right of action under the CFEPA. . . . A party must follow the administrative route established by the legislature and failure to do so results in a lack of statutory authority to pursue such a claim in Superior Court. . . . The plaintiff never obtained a release to sue from the CHRO pertaining to Greenberg. The plaintiff's failure to follow the prescribed administrative route enunciated in General Statutes §§ 46a-100 through 46a-104 as to Greenberg results in this court's lack of subject matter jurisdiction. Accordingly, the defendants' motion to dismiss the plaintiff's complaint as to Greenberg is granted."

Practice Book § 143 governs motions to dismiss.[8] "A motion to dismiss admits all facts well pleaded and

officer shall determine the damage suffered by the complainant . . . and shall allow reasonable attorney's fees and costs. . . ." (Emphasis added.)

[8] Practice Book § 143 provides in pertinent part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2)

invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." *Herzog Foundation, Inc.* v. *University of Bridgeport,* 41 Conn. App. 790, 793, 677 A.2d 1378, cert. granted on other grounds, 239 Conn. 907, 682 A.2d 998 (1996). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) *Discover Leasing, Inc.* v. *Murphy,* 33 Conn. App. 303, 306–307, 635 A.2d 843 (1993).

The Superior Court lacks subject matter jurisdiction in a matter if an adequate administrative remedy exists, and it has not been exhausted. *Simko* v. *Ervin,* 234 Conn. 498, 503, 661 A.2d 1018 (1995); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977). The defendants argue that an adequate administrative remedy does exist against Greenberg and that the plaintiff did not exhaust that remedy because Greenberg was not named as a defendant in her complaint to the CHRO. We disagree.

It is not necessary for the purposes of this appeal to determine whether the plaintiff's complaint has stated a common law cause of action against Greenberg or whether, because her administrative remedy against Greenberg was inadequate, she can pursue other remedies in the trial court. Those determinations are not necessary because we conclude that the plaintiff did exhaust her administrative remedies against Greenberg, and, therefore, the court had subject matter jurisdiction. Our conclusion is based on the reasoning of *Maturo* v. *National Graphics, Inc.,* 722 F. Sup. 916 (D. Conn. 1989), which has a similar factual situation.

lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. . . ."

The *Maturo* plaintiff had filed a complaint with the CHRO and the federal Equal Employment Opportunities Commission (EEOC) alleging sexual harassment. At the time she made the complaint, the plaintiff was not represented by counsel, but a CHRO staff member helped her to draw up the CHRO complaint. The complaint listed only the employer company and the company's president as respondents. After the plaintiff obtained a notice of the right to sue from the EEOC, she filed suit in District Court, adding as defendants the employee supervisor who had allegedly harassed her and another supervisor.

"Generally, an action under Title VII can proceed only against those individuals named as respondents in the complaint filed with the EEOC. 42 U.S.C. § 2000e-5 (f) (1). The purpose of this exhaustion requirement is to provide notice to those alleged to have committed the violations and to provide an opportunity for the parties to comply voluntarily with the requirements of Title VII. . . . A limited exception to the exhaustion requirement permits an action against a party not named as a respondent in the EEOC complaint if the underlying dual purposes of the exhaustion requirement are otherwise satisfied. . . . Specifically, the factors to be considered under this exception are '1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant

is to be through the named party.' [*Garcia* v. *Gardner's Nurseries, Inc.*, 585 F. Sup. 369, 372 (D. Conn. 1984)]." (Citations omitted.) *Maturo* v. *National Graphics, Inc.*, supra, 722 F. Sup. 924–25.

The *Maturo* court found that the plaintiff's complaint filed with the CHRO and the EEOC satisfied those requirements. Each of the individual defendants had actual notice of the complaint, and the CHRO complaint had identified by name the employee who had allegedly harassed the plaintiff. Thus, neither previously omitted defendant had suffered any prejudice from the lack of formal notice. In addition, for purposes of voluntary conciliation, the interests of the supervisors were substantially identical to those of the company and its president. Further, the allegedly harassing supervisor had represented to the plaintiff that he had the authority to affect her relationship with the company. Finally, the court considered the fact that the plaintiff had not been represented by counsel at the time she filed the administrative complaints and, instead, relied on the advice of a CHRO employee. Considering all of these factors, the court concluded that "the underlying purposes of providing notice and encouraging conciliation were satisfied and [the] plaintiff should not be barred from proceeding because of a technical failure in the filing of her CHRO and EEOC complaints." Id., 925.

Although the court in *Maturo* was concerned primarily with EEOC filing requirements, the same rationale applies to the requirements of the CHRO. We conclude that the defendant Greenberg had sufficient notice of the plaintiff's complaint filed with the CHRO. Paragraphs eight and nine of her complaint state: "8. On February 24, 1993, I spoke to Mr. Greenberg about the sexual harassment I was being subjected to by Mr. O'Dell and Mr. Burke. Mr. Greenberg did not discipline

Mr. O'Dell or Mr. Burke in any way, and the harassment did not stop.

"9. On or about March 5, 1993, I told Mimi that I could no longer work under those conditions. I again spoke to Mr. Greenberg, he apologized for the treatment I was getting from Mr. O'Dell and Mr. Burke. Mr. Greenberg offered to give me a pink slip stating that I was being laid off due to lack of work, and I accepted the offer."

Reading the allegations of the CHRO filing in a light most favorable to the plaintiff, we identify the "Mr. Greenberg" named by the plaintiff in her CHRO complaint as being the Sidney Greenberg named as a defendant in her court complaint.

In his position as "owner"[9] and president of the companies involved, Greenberg certainly had notice of the CHRO complaint. Because the plaintiff's CHRO complaint specifically stated which acts performed or not performed by Greenberg that the plaintiff considered to have harmed her, there can be no prejudice as to him. In addition, Greenberg's interests as president and owner of the companies and the interests of the two companies themselves are nearly identical for purposes of voluntary conciliation and compliance. See *Busconi* v. *Dighello*, 39 Conn. App. 753, 766, 668 A.2d 716 (1995), cert. denied, 236 Conn. 903, 670 A.2d 321 (1996) ("corporation and those who control it are one entity and the acts of one are the acts of all"). Further, Greenberg's action of offering the plaintiff a pink slip represented to the plaintiff that he could control her relationship with the company. Finally, as did the *Maturo* court, we consider the fact that the plaintiff was not represented

---

[9] "Owner" is the term the plaintiff uses in her trial court complaint. In light of the fact that at least one of the companies involved is a corporation, it is unclear what this term implies. Greenberg may be the sole stockholder or a stockholder with a controlling interest.

by counsel at the time she filed the complaint with the CHRO.[10] Considering the entire situation, we conclude that the underlying purposes of providing notice to Greenberg were satisfied in the plaintiff's filing with the CHRO.

Greenberg claims that he was prejudiced because the CHRO complaint did not name him as a respondent, which, he argues, deprived him of an opportunity to resolve informally the plaintiff's claims against him. We do not agree. Any investigation performed by the CHRO would, of necessity, have included him. The complaint against the corporate entities could not have been resolved without involving Greenberg. When the CHRO lost jurisdiction of the business entities, it, in effect, lost jurisdiction over Greenberg individually.

Greenberg also argues that the plaintiff cannot satisfy the first criteria of the *Maturo* test because she could easily have determined his role as an unnamed party, and, in fact, she had determined his role. Although Greenberg was not named in the title of the CHRO complaint, he was named in its text. Thus, the plaintiff had ascertained the part he played in her allegations and did name him.

The plaintiff exhausted her administrative remedies as to Greenberg, and her complaint as to him should not have been dismissed.

The judgment of dismissal is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

---

[10] We are aware that the plaintiff was represented by counsel at the time she sought a release of jurisdiction from the CHRO.