[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AS TO DEFENDANTS' MOTIONS TO DISMISS
The plaintiff alleges the following facts in her complaint: The plaintiff, Beth Kavy, is a certified teacher who was employed by the defendant Board of Education ("the Board") of the Consolidated School District of New Britain ("CSD"). The Board's function is to supervise its employees and agents within the CSD, and also to manage the CSD. Within the CSD's jurisdiction are the Slade school and the Diloreto Magnet school.
The other defendants named in the plaintiffs complaint are as follows: The defendant James Rhinesmith is the superintendent of schools of the CSD. The defendant Scott MacDonald is the personnel director for the CSD. The defendant Ashley Roberts is the principal of the Diloreto Magnet School, and the defendant Maria Garcia is a nurse assigned to that school. Finally, the defendant Joann Beekley is the principal of the Northend School.
The plaintiff alleges in her complaint that in May of 1997, she was working at the Slade school as a special education teacher. At about that time, she began to receive offensive and threatening materials through the interschool mail and computer systems. Also at that time, a call was made to the Connecticut Department of Children and Families ("DCF"), in which the caller made false statements concerning the plaintiffs care of her minor daughter.
As a result of the foregoing, the plaintiff contacted the New Britain police department ("NBPD"). The NBPD advised the plaintiff to speak with the defendant Roberts in regard to the matter as, allegedly, the calls and offensive materials had originated from the Diloreto school. The NBPD did, however, speak to Garcia, who worked at the Diloreto school at the time and was the suspected author of the materials and caller to DCF. For a short while thereafter the harassment ceased.
On May 9, 1997, the plaintiff, as suggested by the NBPD, orally informed Roberts of the harassment. She also told Roberts that the incidents had originated from the Diloreto school. Roberts allegedly admonished the plaintiff, telling her to keep her personal life private. The plaintiff also alleges that Roberts offered her no procedure by which to address her complaints, and that Roberts failed to investigate the matter although Roberts knew or should have known that the perpetrator of the aforementioned conduct was under Roberts' direct supervision. CT Page 10899
In August of 1997, the plaintiff was notified that she had received a new appointment to the Diloreto school for the following school year. As a result of this appointment, Roberts became the plaintiffs supervisor. Prior to and on the first day of school, Roberts again admonished the plaintiff not to bring her personal life into the school.
Beginning in September of 1997, the plaintiff again received offensive communications through the Diloreto school computer system. This harassment continued well into October, 1997. During this time period, the plaintiff alleges that she notified Lou Grabowsky, the Diloreto school assistant principal of the harassment, which was sexual in nature and which the plaintiff alleges created an intimidating, offensive and hostile work environment.
Grabowsky then informed Roberts of the plaintiffs allegations of sexual harassment. Roberts in turn notified MacDonald, the director of personnel for the Board, regarding the alleged sexual harassment. As a result, several meetings were held with the plaintiff and other employees of the Board, including Roberts and MacDonald. The plaintiff alleges, however, that these defendants did nothing further to investigate the harassment.
Following an incident between the plaintiff and Garcia on October 29, 1997, Roberts set up a meeting in order to mediate the escalating situation. Roberts also informed superintendent Rhinesmith of the proposed meeting, but the meeting never took place because Rhinesmith canceled it. Instead of the proposed meeting, Rhinesmith informed Roberts of his decision to transfer Garcia and the plaintiff from the Diloreto school. Rhinesmith then sent MacDonald to inform the plaintiff of his decision. The plaintiff alleges that she refused to accept the transfer because it was a lesser position, and as such, the plaintiff claims that she was constructively discharged. The foregoing is the relevant factual background of the plaintiffs ten count complaint for purposes of the court's discussion here.[1]
Presently before the court are the defendants Board, Rhinesmith, Beekley, Roberts and MacDonald's motions to dismiss various counts of the plaintiffs complaint.[2] Although the motion to dismiss is the proper motion to challenge whether the plaintiff has exhausted her administrative remedies, as well as whether the prior pending action doctrine bars the plaintiffs claims, it is not the proper motion to challenge the remaining CT Page 10900 counts of the plaintiffs complaint.
The individual defendants in their memorandum of law in support of the motions to dismiss counts one, two, three and five argue, essentially, that the plaintiffs claims are insufficient because the individual defendants may not be held liable under the Connecticut Fair Employment Practices Act ("CFEPA"). That claim does not implicate the subject matter jurisdiction of the court. Instead that claim tests whether the plaintiffs counts state a valid claim for relief. The same is true of the defendants' motions to dismiss the second count of the complaint on the ground that General Statutes § 46a-100 does not authorize a claim for sexual orientation discrimination.
It is well recognized that the purpose of the motion to strike "is to test the legal sufficiency of a pleading." (Internal quotation marks omitted.) RK Constructors. Inc. v.Fusco Corp. , 231 Conn. 381, 384, 650 A.2d 153 (1994). "[A] motion to strike is the proper means of attacking a pleading that on its face is legally insufficient." (Internal quotation marks omitted.) Capers v. Lee, 239 Conn. 265, 282, 684 A.2d 696 (1996) (McDonald, J., dissenting). "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief may be granted." Faulkner v. United Technologies Corp. , 240 Conn. 576,580, 693 A.2d 293 (1997).
The Connecticut Supreme Court has permitted the Superior Court to treat a motion to dismiss as a motion to strike where appropriate; and it is appropriate here, since the plaintiff has offered no objection to this "procedural anomaly." See McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 527, 590 A.2d 438 (1991) ("trial court should have treated the motion to dismiss as a motion to strike"). This court will address the merits of the defendants arguments with regard to the above claims, and treat the motions to dismiss as motions to strike where appropriate.
"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . ." (Citation omitted; internal quotation marks omitted.) Johnson v.Dent. of Public Health, 48 Conn. App. 102, 107, 710 A.2d 176
(1998). "Jurisdiction of the subject matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Konover v. Town of West Hartford, 242 Conn. 727, 740, CT Page 10901699 A.2d 158 (1997). "Elm deciding a motion to dismiss, [the trial court] must consider the allegations of the complaint in their most favorable light. . . ." (Internal quotation marks omitted.) Savage v. Aronson, 214 Conn. 256, 264, 571 A.2d 696
(1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) Barde v.Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "Where, however, . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted.) Id., 62.
 I. Exhaustion of Administrative Remedies
The defendants Board, Rhinesmith, Roberts, Beekley and MacDonald move to dismiss the fourth count of the plaintiffs complaint on the ground that the plaintiff failed to avail herself of the grievance and arbitration procedures as set forth in the Collective Bargaining Agreement ("CBA") to which the plaintiff is a party. Specifically, the defendants argue that the plaintiffs failure to exhaust her administrative remedies under the CBA deprives this court of subject matter jurisdiction over the fourth count.
The plaintiff maintains that she has alleged in her complaint that she pursued the appropriate procedures under the CBA. Alternatively, she argues that the CBA does not require her to pursue any grievance and arbitration procedures. Additionally, the plaintiff argues that further recourse to the administrative process under the CBA, in any event, would be futile.
The parties stipulated at oral argument that the CBA attached to the defendants' memorandum is authentic. Although the defendants argue in their memorandum of law that the plaintiff failed to follow the grievance procedures provided for in the CBA, the defendants have not presented any affidavits or other evidence that would contradict the well plead allegations of the plaintiffs complaint. Aside from the defendants argument in their memorandum that the plaintiff has failed to follow the CBA grievance procedures, there is nothing before the court to support that characterization of the plaintiffs conduct.
The plaintiff in the fourth count of her complaint, at CT Page 10902 paragraph 51, alleges that she "refused to accept the transfer [of her position], and through her union representatives and following administrative procedures, opposed the involuntary transfer. However, the defendant Board would not revoke the transfer." Plaintiffs counsel has not conceded, either at oral argument or in her brief that the plaintiff failed to follow her administrative procedures in opposing the involuntary transfer.
In the absence of any affidavits or evidence that would call into question the accuracy of the plaintiffs allegation, the court must conclusively presume the validity of the allegation. See Barde v. Board of Trustees, supra, 207 Conn. 62. "It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those as alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.)Lawrence Brunoli, Inc. v. Town of Branford, 247 Conn. 407,410-11, 722 A.2d 271 (1999). Viewing the allegations of the plaintiffs complaint in their most favorable light, the motions to dismiss are denied as to the fourth count.
 II. Individual liability under CFEPA
The individual defendants Rhinesmith, Roberts, Beekley and MacDonald seek to dismiss the first, second, third and fifth counts of the complaint on the ground that these counts allege individual liability, and individual employees cannot be personally liable under the terms of the CFEPA for employment discrimination.
The plaintiff argues in opposition that because the Board may be obligated to indemnify its employees for any infringement of the plaintiffs civil rights under General Statutes § 10-235
(a), it must follow that the employees of the Board may be sued individually under CFEPA.
Whether an individual employee may be held liable under the CFEPA has yet to be addressed by any appellate authority in Connecticut. To date, there exists a split of authority within the Superior Court regarding this issue. Compare Nwachukwu v.State Dept. of Labor, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 573595 (December 17, 1997, Rittenband, J.) (supervisory employee not personally liable under General Statutes § 46a-60 (a)(1)), with Lueneburg v.CT Page 10903Mystic Dental Group, Superior Court, judicial district of New London at New London, Docket No. 535839 (August 1, 1996, Hurley,J.) (supervisory employees individually liable under CFEPA).
"In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) In Re DarleneC., 247 Conn. 1, 10, 717 A.2d 1242 (1998). "Where the meaning of a statute . . . is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction." (Internal quotation marks omitted.) Pitchell v.City of Hartford, 247 Conn. 422, 432, 722 A.2d 797 (1999).
The plaintiffs first count alleges that the individual defendants sexually harassed the plaintiff by creating an intimidating, hostile and offensive work environment, all in violation of General Statutes § 46a-60 (a). Section 46a-60
(a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: . . . (8) For an employer, by himself or his agent, for an employment agency, by itself or its agent . . . to harass any employee . . ., on the basis of sex."
For purposes of the CFEPA, an "employer," is defined as, "the state and all political subdivisions thereof and means any person or employer with three or more persons in his employer. . . ." General Statutes § 46a-5 1 (10). Here, none of the individual defendants satisfy the statutory definition of an employer for purposes of liability under the CFEPA. Even the defendant Rhinesmith, as the superintendent of the CSD, is not an employer under the statute because he does not compensate the individuals whom he supervises. See, e.g., Nwachukwu v. State Dent. of Labor, supra, Superior Court, Docket No. 573595.
Based upon the plain language of General Statutes §§46a-51 (10) and 46a-60 (a)(8), the individual defendants cannot be held liable to the plaintiff in their individual capacities because they are not employers within the meaning of the CFEPA. See also Walters v. Homestaff Health Care, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 146961 (February 8, 1996, Tobin, J.); Martinez-Duffy v. Dejesus, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545193 (May 1, 1996, Wagner, J.). CT Page 10904 Accordingly, treating the individual defendants' motions to dismiss the first count of the complaint as motions to strike, the motions are granted.
The second count of the plaintiffs complaint is brought pursuant to General Statutes § 46a-81c provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent . . . to discharge from employment any individual or to discriminate against him . . . because of the individual's sexual orientation. . . ." The motions to dismiss, being treated as motions to strike, are granted as to the second count of the plaintiffs complaint because under the clear language of the CFEPA, the defendants are not "employers" under General Statutes §§ 46a-51 (10) and 46a-81c.
The third count of the plaintiffs complaint alleges that the individual defendants violated General Statutes § 46a-60 (a) (5). Under § 46a-60 (a)(5), it is a violation of the CFEPA "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice . . .
As stated previously, it is a "discriminatory employment practice" in violation of § 46a-81c to discriminate in terms of employment conditions against any person based upon that person's sexual orientation. Moreover, General Statutes §46a-51 (9) defines an "employee" as "any person employed by an employer. . . ." Because the legislature has expressly provided that employees who aid and abet others in discriminatory employment practices may be liable under § 46a-60 (a)(5), the individual defendants' motions to dismiss the third count are denied.
Finally, the defendants' motions to dismiss count five of the plaintiffs complaint are also denied. Count five alleges that the individual defendants violated General Statutes § 46a-60 (a) (4). Section 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: . . . (4) For any person . . . to discharge, expel or otherwise discriminate against any person. . . ." The statute applies to "any person" and not just "employers" under the CFEPA. The individual defendants are persons under the definition set forth at General Statutes § 46a-51 (14). CT Page 10905
 III. CHRO Release
The Defendant Rhinesmith also moves to dismiss the first, second, third and fifth counts of the plaintiffs complaint against him personally, on the additional ground that the plaintiff has failed to exhaust her administrative remedies with regard to him.[3] The plaintiff did not name Rhinesmith as a respondent in her CHRO complaint, the CHRO did not issue a release with regard to him but she still sued him as a defendant in this action. Rhinesmith argues the plaintiff failed to exhaust her administrative remedies as to him by not filing a CHRO complaint against him and that this court therefore lacks subject matter jurisdiction.
The plaintiff argues that although she did not name Rhinesmith in her CHRO complaint, an exception to the exhaustion requirement is applicable here. Specifically, under the criteria set forth in Malaskey v. Metal Products, Corp. , 44 Conn. App. 446,453-54, 689 A.2d 1145, cert. denied, 241 Conn. 906, 695 A.2d 539
(1997), the plaintiff argues that she may properly maintain her claims against Rhinesmith here although she failed to name him as a defendant in the CHRO complaint.
In Malaskey, the Connecticut Appellate Court held that although an individual is not named in a CHRO complaint, the complainant may nonetheless later commence an action against the unnamed individual, provided that certain criteria are met.Malaskey v. Metal Products, Corp., supra, 44 Conn. App. 453. Specifically, the Appellate Court stated:
"A limited exception to the exhaustion requirement permits an action against a party not named as a respondent in the [CHRO] complaint if the underlying dual purposes of the exhaustion requirement are otherwise satisfied . . . Specifically, the factors to be considered under this exception are (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [CHRO] complaint; (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the [CHRO] proceedings; (3) whether its absence from the [CHRO] proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the CT Page 10906 complainant is to be through the named party." (Internal quotations marks omitted.) Malasky v. Metal Products Corp., supra, 44 Conn. App. 453-54.
Although this test was adopted from Maturo v. NationalGraphics. Inc., 722 F. Sup. 916 (D. Conn. 1989) concerning the EEOC exhaustion requirement, with its underlying purpose of notice to the alleged wrongdoers and an opportunity for voluntary conciliation, the Appellate Court found that the rationale underlying the test was equally applicable to CHRO complaints. Id., 454.
This court finds that the Malasky exception to the exhaustion requirement is applicable here. Defendant Rhinesmith had notice of the claim and his conciliation interests as Superintendent are identical to those of CSD, a named respondent to the CHRO complaint.
The first element of the four part test has been met here because Rhinesmith was named in the text of the CHRO complaint. In Malaskey, the Appellate Court found that the first criteria of the test has been met where the nonnamed party had been referred to by name in the text of the CHRO complaint. Malaskey v. MetalProducts Corp. , supra, 44 Conn. App. 455.
The second criteria of the test is also met because Rhinesmith's interests, as superintendent of the CSD, are virtually identical to the interests of the named respondent Board in securing voluntary conciliation and compliance with the plaintiff. See Malaskey v. Metal Products Corp., supra,44 Conn. App. 455.
Furthermore, Rhinesmith has suffered no ascertainable prejudice as a result of the plaintiffs failure to name him as a respondent in the CHRO complaint. He received actual notice of the claim as the CSD addressee for CHRO. Any investigation conducted by the CHRO of the plaintiffs claims would necessarily have included Rhinesmith because he made the decision to transfer the plaintiff. The third criteria has been met. Malaskey v. Metal Products Corp., supra, 44 Conn. App. 456. Finally, the fourth criteria is met because Rhinesmith, as superintendent of the CSD, exercised control over the plaintiff. Id., 455.
For the foregoing reasons, the court finds that, under theMalaskey doctrine, the plaintiff exhausted her administrative CT Page 10907 remedies as to Rhinesmith. His motion to dismiss these counts on this basis is denied.
 IV. Prior Pending Action Doctrine
The defendants Board, Rhinesmith, Roberts, Beekley and MacDonald move to dismiss the sixth, seventh, eighth and tenth counts of the complaint based upon the prior pending action doctrine. The defendants maintain that on July 2, 1998, the plaintiff filed a similar action to the one at bar in federal District Court. Thus, they claim the prior pending action doctrine is applicable and the motions to dismiss must be granted.
The plaintiff argues in opposition to the motions to dismiss,inter alia, that the prior pending action doctrine is inapplicable because the doctrine applies only to actions which are brought in the same jurisdiction. Therefore, because the federal action is in a jurisdiction separate from this one, the doctrine does not apply and the motions to dismiss must be denied.
"The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any good reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the samejurisdiction." (Emphasis added; internal quotation marks omitted.) Department of Utilities v. Carothers,28 Conn. App. 674, 679, 613 A.2d 316 (1992) citing Halpern v. Board ofEducation, 196 Conn. 647, 652-53, 495 A.2d 264 (1985). The prior pending action doctrine "is not applicable where two actions, although virtually alike, are pending in different states or where one action is in a state court and the other in a federal court sitting in the same state." (Internal quotation marks omitted.) Realonal Refuse Disposal District One v.Colebrook, Superior Court, judicial district of Litchfield, Docket No. 62299 (October 7, 1993, Pickett, J.). "[T]he prior pending doctrine need not be applied to a state action when there is a federal action pending as the federal and state courts are courts of separate and distinct jurisdiction." Wack v. BrooksideImport Specialties. Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 350999 (November 12, 1993, CT Page 10908Zoarski, J.).
The prior pending action doctrine is inapplicable here. Although the parties and the claims in this action may be in part similar to those of the federal action, the two actions have been brought in separate jurisdictions. Accordingly, the motions to dismiss are denied.
 V. General Statutes * 46a-100
The defendants Board, Rhinesmith, Roberts, Beekley and MacDonald move to dismiss the second count of the plaintiffs complaint, which alleges sexual orientation discrimination, on the ground that the legislature has not authorized that type of claim to be brought in Superior Court pursuant to General Statutes § 46a-100.
The defendants' argument here is flawed because it is predicated upon the 1997 version of § 46a-100; not upon §46a-100 as it currently exists.[4] On July 1, 1998, Public Act 98-245, which modified the statutory language of § 46a-100
became effective. Public Act 98-245 was applicable to all cases which were pending with the CHRO on its effective date. See Public Act 98-245 (14).
The right to sue under § 46a-100 is no longer limited to claims based upon a violation of § 46a-60. Section §46a-100, as it is currently drafted, provides in relevant part: "Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court . . .
The plaintiff filed her claim with the CHRO for sexual orientation discrimination in March, 1998. The CHRO issued her a release in October, 1998. Therefore, the plaintiffs case was pending with the CHRO on July 1, 1998 when Public Act 98-245 became effective. As a result, the current version of §46a-100 applies to this action.
"By Public Act 98-245, the legislature modified General Statutes § 46a-100 to create a cause of action for sexual orientation discrimination that may be heard by the Superior Court." Bogdahn v. Hamilton Stan. Space Systems, Superior Court, CT Page 10909 judicial district of Hartford at Hartford, Docket No. 569864 (October 7, 1998, Teller, J.). In light of the express statutory language of § 46a-100, the plaintiffs claim for sexual orientation discrimination is properly before this court and the motions to dismiss on this basis are denied.
 CONCLUSION
For the reasons stated above, with regard to the individual defendants only, the motions to dismiss counts one and two of the complaint are granted. The balance of said motions, for the reasons stated above, are denied.
 James T. Graham Superior Court Judge