[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Mohinder P. Chadha, M.D. brought this action seeking damages for loss of his medical practice, damage to his reputation and emotional harm. He has appeared pro se and is now proceeding on his third revised complaint.
The defendants Charlotte Hungerford Hospital (CHH), Samuel Langer, M.D., Michael Kovalchik, M.D., and Justin Schechter, M.D. move to strike certain portions of the Revised Complaint dated 7/5/00 as follows:
(1) ¶ 12 of count one
(2) count three
(3) count four CT Page 14509
(4) ¶ 8 of count five
(5) count seven
(6) count eight
(7) ¶ 7 of count nine
(8) count eleven
(9) ¶ 12 of count twelve
(10) count thirteen
(11) count fifteen
(12) count eighteen
(13) count nineteen
(14) count twenty one
(15) prayer for relief seeking "legal fees and professional expenses".
A motion to strike challenges the legal sufficiency of a pleading. Practice Book § 10-39. "Like the demurrer it admits all facts well pleaded." Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). Further, the facts as pleaded in the complaint must be construed most favorably towards the plaintiff. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170 (1988). Accordingly, if the facts provable under the allegations support a cause of action, the motion must fail.
The court is limited "to a consideration of the facts alleged in the complaint. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle, 38 Conn. App. 360, 364
(1995), rev'd on other grounds, 236 Conn. 845 (1996); see also Cavallov. Derby Savings Bank, 188 Conn. 281, 285-86 (1982). "Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." LiljedahlBros., Inc. v. Grigsby, 215 Conn. 345, 348 (1990).
"Although the motion to strike admits all facts well pleaded, it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Alarm Applications Co. v. Simsbury Volunteer Fire Co., CT Page 14510179 Conn. 541, 545 (1980); Sheiman v. Lafayette Bank Trust Co.,4 Conn. App. 39, 42 (1987); Greene v. Metals Selling Corp.,3 Conn. App. 40, 41 (1984). Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 664 (1992)." (Internal quotation marks omitted.)Emerick v. Kuhn, 52 Conn. App. 724, 739, cert. denied, 249 Conn. 929, cert. denied, ___ U.S. ___, 120 S.Ct. 500, 145 L.Ed. 386 (1999).
The defendants' claim of legal insufficiency as to the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 111-1 et seq., addresses ¶ 12 of count 1 and counts 3, 8, 11, 13, 19 and 21. Those allegations are as follows,
 12. Pursuant to the Health Care Quality Improvement Act of 1986, Section 427 (42 U.S.C. § 11137) there is liability for submitting a false information to the National Practitioner Data Bank.
(Revised Compl. dated 7/5/00, Count ¶ 12.)
 3. Pursuant to the Health Care Quality Improvement Act of 1986, Section 411 (42 U.S.C. § 11111) there are no protections from damages for not complying with the Section 412: Standards for professional review actions.
(Revised Compl. Dated 7/5/00, Count 1, ¶ 3.)
 2. Based on the above information, Dr. Langer did not comply with the Health Care Quality Improvement Act of 1986, Section 412 (42 U.S.C. § 11112): "Standards for Professional Review Actions".
(Revised Compl. Dated 7/5/00, Count 8, ¶ 2.)
 2. Pursuant to the Health Care Quality Improvement Act of 1986, Section 412 (42 U.S.C. § 11112) "Standards for Professional Review Actions", Dr. Kovalchik intentionally and maliciously and recklessly made no efforts to obtain the facts regarding his allegation.
(Revised Compl. Dated 7/5/00, Count 11, ¶ 2.)
Paragraph 2 of Count 13 is identical to paragraph 2 of count 8 except that it is directed to Dr. Schechter. Paragraph 2 of count 19 is identical to the above except that it is directed to Dr. Stein. Paragraph 2 of count 21 alleges this same conduct as to CHH. CT Page 14511
The defendants argue that the HCQIA does not create a private cause of action for the plaintiff physician such as here. They cite a number of federal cases for this proposition. The plaintiff responds in his objection with allegations of evidence to support the alleged violations. As noted previously, in deciding this motion, the court considers only those facts alleged in the complaint. Except for quoting42 U.S.C. § 11137, he provides no authority to support his cause of action.[1] The authority provided by the defendants is persuasive. The Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11101 et seq., does not create a private cause of action for the benefit of physicians. Hancock v. Blue Cross-Blue Shield of Kansas, Inc., 21 F.3d 373
(10th Cir. 1994); Doe v. U.S. Dept. of Health and Human Services,871 F. Sup. 808 (E.D.Pa. 1994), aff'd., 66 F.3d 310; Goldsmith v.Harding, 762 F. Sup. 187 (S.D. Ohio 1991). Accordingly, the court strikes paragraph 12 of count 1 and counts 3, 8, 11, 13, 19 and 21.
The defendants next argues that counts 4, 7, 15 and 18, which purport to set forth a cause of action under General Statutes § 19a-17b, should be stricken. The defendants correctly allege that § 19a-17b, the peer review statute, does not create an independent cause of action. The plaintiff responds by referring to the following language:
 (b) There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person who provides testimony, information, records, documents, reports, proceedings, minutes or conclusions to any hospital, hospital medical staff, professional society, medical or dental school, professional licensing board or medical review committee when such communication is intended to aid in the evaluation of the qualifications, fitness or character of a health care provider does not represent as true any matter not reasonably believed to be true.
General Statutes § 19a-17b(b).
This language does not create a cause of action.
 In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a CT Page 14512 remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
(Citations omitted; internal quotation marks omitted.) Napoletano v.CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 249 (1996), cert. denied, 520 U.S. 1103, 117 S.Ct. 1106, 137 L.Ed. 308 (1997).
As recently noted by our Supreme Court, the purpose behind the peer review statute is:
 to encourage committee members to "take positions that they might not otherwise take if they thought they were going to be subpoenaed in the middle of a malpractice case." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1980 Sess., p. 561; see also Mahmoodian v. United Hospital Center, Inc., 185 W. Va. 59, 65, 404 S.E.2d 750, cert. denied, 502 U.S. 863, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991) (peer review privilege "evinces public policy encouraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care"). "[O]nly where . . . peer review committees . . . are assured of confidentiality [will they] feel free to enter into uninhibited discussions of their peers." Claypool v. Mladineo, 724 So.2d 373, 388
(Miss. 1998); see also Cruger v. Love, 599 So.2d 111, 114-15 (Fla. 1992) (peer review privilege is "intended to prohibit the chilling effect of the potential public disclosure of statements made to or information prepared for and used by the committee in carrying out its peer-review function"); Trinity Medical Center, Inc. v. Holum, 544 N.W.2d 148, 155 (N.D. 1996) ("physicians . . . would not feel free to openly discuss the performance of other doctors practicing in the hospital, without assurance that their discussions in committee would be confidential and privileged"); Moretti v. Lowe, 592 A.2d 855, 857 (R.I. 1991) ("[i]n enacting [Rhode Island's] peer-review statute, the Legislature recognized the need for open discussions and candid self-analysis in peer review meetings to ensure that medical care of high quality will be available to the public").
Babcock v. Bridgeport Hospital, 251 Conn. 790, 825-26 (1999). CT Page 14513
Because counts 4, 7, 15 and 18 purport to state causes of action under General Statutes § 19a-17b, and such an action does not exist, they are stricken. Applying the same reasoning as above, the defendants' motion to strike paragraph 8 of count 5, paragraph 7 of count 9 and paragraph 12 of count 12 is granted. These allegations refer to General Statutes § 19a-20, which provides qualified immunity to individuals providing information to health care boards and commissions and the department of public health. It does not create a cause of action.
The defendants finally move to strike the prayer for relief seeking "professional and legal costs." Noting that the court (Pickett, JTR) had earlier struck a request for attorney's fees, the defendants also argue that there is no statutory or contractual authority for other "legal costs" or "professional costs". The plaintiff responds that he is seeking the costs incurred for expert witnesses during the proceedings and his legal representations before the Department of Public Health and the Board, and not for this action. In fact, that is how the demand for relief reads. He is claiming these costs as damages resulting from the defendants' conduct; he is not claiming costs or attorneys fees for this action. Accordingly, the motion to strike is denied. See Blancato v.Feldspar Corp., 203 Conn. 34, 44 (1987).
The defendants also move to dismiss counts 2, 6, 10, 14, 17 and 20 on the grounds that the plaintiff failed to exhaust remedies available under the bylaws. These counts allege revocation of privileges and violations of hospital bylaws.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531,544 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State,190 Conn. 622, 624 (1983). Subject matter jurisdiction can be raised at any time. Gagnon v. Planning Commission, 222 Conn. 294, 297 (1992). Once raised, the issue of subject matter jurisdiction must be resolved before proceeding further with the case. Figueroa v. CS Ball Bearing, 237 Conn. 1,4 (1996).
"In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296,308 (1998). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. CT Page 14514 . . . Where, however, . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) Barde v. Board ofTrustees, 207 Conn. 59, 62 (1988). "The Superior Court lacks subject matter jurisdiction in a matter if an adequate administrative remedy exists, and it has not been exhausted." Malasky v. Metal Products Corp.,44 Conn. App. 446, 452, cert. denied, 241 Conn. 906 (1997). "Two recognized exceptions to the exhaustion doctrine are in circumstances in which recourse to the administrative remedy would be inadequate or demonstrably futile." Johnson v. Department of Public Health,48 Conn. App. 102, 113 (1998).
Here, the defendants argue that the plaintiff's claims violations under the hospital bylaws must be dismissed because he failed to follow through on the procedure afforded under the bylaws. As set forth in his complaint, the plaintiff was informed by his right to a hearing under the bylaws:
 7. The hospital informed the plaintiff of the allegations and rights to a hearing on May 22, 1997 [A-33], when the plaintiff's license was suspended and the plaintiff was no longer a member of the medical staff The plaintiff did not receive any charges and the notification for the hearings for five months when the plaintiff was the member of the medical staff.
(Revised Complaint dated 07/05/00, Count 2, ¶ 7; see also Defs.' Mem. in Supp. of Mot. to Strike, Exh. 7.) It appears to be undisputed that despite the opportunity afforded him the plaintiff did not request a hearing. In fact, the plaintiff states in opposition to this argument by the defendants that:
 [t]he "exhaustion of Administrative Remedies" assertion is moot. Given the above facts that the plaintiff was never a subject of investigation for any negligence, malpractice. And, without the commencement of any peer review proceedings against the plaintiff by the department of Psychiatry, Ethics Privileges 
Credentials committee, Medical Executive Committee, the defendants' assertion that the plaintiff did not exhaust the Administrative Remedies is moot.
(PI.'s Mem. of Law in Supp. of his Objection dated 10/10/00 at 7.) CT Page 14515
The doctrine of failure to exhaust applies to contractual remedies. SeeMendillo v. Board of Education, 246 Conn. 456, 474 (1998). Here the remedy available to the plaintiff is provided through the bylaws of the defendant Charlotte Hungerford Hospital. See Owens v. New Britain GeneralHospital, 229 Conn. 592, 604-06 (1994). The plaintiff has not presented this court with evidence that the process furnished in the bylaws would be either futile or inadequate.
 The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary [because] as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. . . .
 Thus, "[t]he two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process.
(Citations omitted, internal quotation marks omitted.)
Johnson v. Statewide Grievance Committee, 248 Conn. 87, 95-96 (1999).
For the above reasons, the court finds that the plaintiff has failed to exhaust the remedies available to him under the bylaw of the Charlotte Hungerford Hospital. Accordingly, counts 2, 6, 10, 14, 17 and 20 are dismissed for failure to exhaust.
The defendants also seek a dismissal of count 1, entitled National Practitioner Data Bank Report, specifically paragraphs 1 through 11 CT Page 14516 against Charlotte Hungerford Hospital. the defamation count against this defendant. They argue that these allegations are essentially a collateral attack on Charlotte Hungerford Hospital's report of its credentialing decision to the Data Bank which the court lacks subject matter to decide. Alternatively, they argue that these allegations should be dismissed for the plaintiff's failure to exhaust his remedies under45 C.F.R. § 60.14, the Health Care Quality Improvement Act.
The court is not persuaded by either argument. Paragraphs 1 through 11 of count 1 sound in defamation and the court is not willing to conjecture as to whether they might also be construed as a collateral attack on the defendant hospital's credentialing decision. As to whether the plaintiff must first exhaust his remedies provided under the HCQIA for correction of allegedly erroneous reports to the Data Bank, a defamation claim is one that is distinct from a claim for injunctive relief against the a reporting entity wherein correction of a report is sought. See Anbar v.Leahan, 1998 WL 314691, at *8 (E.D.Pa. 1998). Accordingly, the authorities cited by the defendants do not indicate that a defamation claim may not be pursued against a reporting entity until a plaintiff has first attempted to have the report corrected by following the procedure set forth in § 60.14 of the Code of Federal Regulations. See Id. at *4.
In conclusion, the court grants the defendants' motion to strike: (1) paragraph 12 of count 1 and counts 3, 8, 11, 13, 19 and 21 on the ground that the Health Care Quality Improvement Act does not create a private cause of action for the benefit of physicians; and (2) paragraph 8 of count 5, paragraph 7 of count 9, paragraph 12 of count 12 as well as counts 4, 7, 15, and 18 in their entirety on the ground that Connecticut's peer review statute does not create a cause of action. Furthermore, the court grants the defendants' motion to dismiss counts 2, 6, 10, 14, 17, and 20, on the ground that the plaintiff failed to exhaust remedies afforded under the defendant hospital's bylaws. Accordingly, the following portions of the plaintiff's amended complaint dated July 5, 2000, sounding in defamation remain intact: count 1, paragraphs 1 through 11, count 5, paragraphs 1 through 7, count 9, paragraphs 1 through 6, count 12, paragraphs 1 through 11, and count 16 in its entirety.
So Ordered.
DiPentima, J.